COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-09-003-CR

 

 

JEREMY DON SCOTT-ROTH                                                  APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

             FROM THE 78TH
DISTRICT COURT OF WICHITA COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

I.  Introduction








This is an appeal from the trial court=s denial
of a motion for new trial following a revocation hearing.  Appellant Jeremy Don Scott-Roth argues in two
points that the trial court abused its discretion by denying his motion for new
trial because (1) his trial counsel rendered ineffective assistance by failing
to impeach a crucial defense witness who allegedly changed his testimony and by
failing to call Scott-Roth to take the stand to refute testimony from the State=s
witnesses and (2) a crucial defense witness had allegedly been Atampered
with.@  We will affirm.

II.  Background

In 2002, Scott-Roth pleaded guilty to aggravated
assault - family violence and aggravated assault - against a public
servant.  Pursuant to a plea bargain
agreement, the trial court sentenced Scott-Roth to ten years= imprisonment,
suspended the sentence, and placed him on community supervision for ten
years.  








In November 2007, a birthday party was held at
the trailer where Scott-Roth, Katheryn (Katy) Starr, Starr=s daughter
Liberty, Starr=s sister Danielle, Danielle=s
daughter, and Danielle=s boyfriend Dusty lived.  The record reveals that Starr and Scott-Roth
had separated several days before the party and that Starr had left the bulk of
her belongings at the trailer where Scott-Roth continued to reside.  Starr began collecting her belongings, while
Scott-Roth dismantled Liberty=s crib
so that Starr could take it with her. 
While Starr, Scott-Roth, and Starr=s mother
Debra LaDeen Summer were in the trailer, Aeverything
just exploded.@ 
Scott-Roth hit Starr in the temple with his fist, causing her head to
hit the wall.  Summer tried to break up
the fight, but Scott-Roth grabbed her arm and bore down on it until it
broke.  Others, including Dusty and a
neighbor named Hershall Pollack, intervened to break up the fight, and the
police were called.

The State thereafter filed its first amended
motion to revoke community supervision, alleging that Scott-Roth had violated
the terms and conditions of his community supervision by unlawfully,
intentionally, or knowingly causing serious bodily injury to Debra LaDeen
Summer by grabbing and/or bending her arm in a manner that caused a fracture of
her arm; by unlawfully, intentionally, or knowingly causing bodily injury to Katheryn
Nichole Starr by striking her in the head with his fist; and by drinking
beer.  After hearing evidence on the
motion to revoke, the trial court found the allegation as to Summer not true,
the allegation as to Starr true, and the allegation as to drinking true.  The trial court entered a judgment revoking
Scott-Roth=s community supervision and
ordering him confined for five years on each charge of aggravated assault.

Scott-Roth thereafter filed a motion for new trial
and motion in arrest of judgment arguing that Pollack, a defense witness, was Atampered
with@ by a
State=s
witness and that Scott-Roth=s trial
counsel was ineffective (a) for failing to offer witnesses who would testify
that Scott-Roth had abstained from the use of alcohol and (b) for failing to
impeach Pollack with a statement he gave to a defense investigator. 








At the hearing on the motion for new trial, Netah
Ladyman and Lena Kinnard testified that they met up with Pollack to have
breakfast on the morning of the revocation hearing.  While they were at the restaurant, Pollack
went outside to smoke and spoke with Starr=s
sister, Danielle, who was in the restaurant parking lot.  Afterward, Pollack told Ladyman and Kinnard
that A[t]hey=re going
to try to say that I perjured myself,@ that he
had a case pending against him in Oklahoma, and that he needed to say that
Scott-Roth was drinking and that he (Pollack) did not see anything.  Ladyman said that Pollack talked to Starr=s family
at the courthouse before he testified and that after he testified, he came out
and said that he had to testify that he was outside the trailer and that he did
not go in until he heard a thud against the wall.  Ladyman said that this was different than
what Pollack had told her before; he had said that he was in the living room of
the trailer when the fight started. 
Scott-Roth also took the stand at the hearing on the motion for new
trial and explained his decision not to testify on his own behalf at the
revocation hearing; Scott-Roth=s trial
counsel did not testify.  After hearing
the above testimony, the trial court denied the motion for new trial, and this
appeal followed.

III.  Record Is Insufficient to Establish
Ineffectiveness








In his first point, Scott-Roth argues that the
trial court abused its discretion by denying his motion for new trial because
his trial counsel rendered ineffective assistance by failing to impeach a
crucial defense witness who allegedly changed his testimony and by failing to
call Scott-Roth to take the stand. 

A.     Standard of Review

To establish ineffective assistance of counsel,
appellant must show by a preponderance of the evidence that his counsel=s
representation fell below the standard of prevailing professional norms and
that there is a reasonable probability that, but for counsel=s
deficiency, the result of the trial would have been different.  Strickland v. Washington, 466 U.S.
668, 687, 104 S. Ct. 2052, 2064 (1984); Salinas v. State, 163 S.W.3d
734, 740 (Tex. Crim. App. 2005); Mallett v. State, 65 S.W.3d 59, 62B63 (Tex.
Crim. App. 2001); Thompson v. State, 9 S.W.3d 808, 812 (Tex.
Crim. App. 1999); Hernandez v. State, 988 S.W.2d 770, 770 (Tex. Crim.
App. 1999).








In evaluating the effectiveness of counsel under
the first prong, we look to the totality of the representation and the
particular circumstances of each case.  Thompson,
9 S.W.3d at 813.  The issue is whether
counsel=s
assistance was reasonable under all the circumstances and prevailing
professional norms at the time of the alleged error.  See Strickland, 466 U.S. at 688B89, 104
S. Ct. at 2065.  Review of counsel=s
representation is highly deferential, and the reviewing court indulges a strong
presumption that counsel=s conduct fell within a wide
range of reasonable representation.  Salinas,
163 S.W.3d at 740; Mallett, 65 S.W.3d at 63.  A reviewing court will rarely be in a
position on direct appeal to fairly evaluate the merits of an ineffective
assistance claim.  Thompson, 9
S.W.3d at 813B14.  AIn the
majority of cases, the record on direct appeal is undeveloped and cannot
adequately reflect the motives behind trial counsel=s
actions.@  Salinas, 163 S.W.3d at 740 (quoting Mallett,
65 S.W.3d at 63).  To overcome the
presumption of reasonable professional assistance, Aany
allegation of ineffectiveness must be firmly founded in the record, and the
record must affirmatively demonstrate the alleged ineffectiveness.@  Id. (quoting Thompson, 9 S.W.3d
at 813).  It is not appropriate for an
appellate court to simply infer ineffective assistance based upon unclear
portions of the record.  Mata v. State,
226 S.W.3d 425, 432 (Tex. Crim. App. 2007).

B.     Failure to Impeach Defense Witness

Scott-Roth first argues that his trial counsel
rendered ineffective assistance by failing to impeach defense witness Pollack
with the statement he had previously given to a defense investigator. 








Here, the record reveals that during the
revocation hearing, Pollack testified that he was standing outside the trailer
when he heard the sound of someone inside hitting the side of the trailer.  When he went inside, he observed Summer
swinging at Scott-Roth and saw that Scott-Roth was trying to catch her hands so
that she would not hit him.  Pollack also
testified that he did not see Scott-Roth drink that day; Pollack had offered
Scott-Roth a drink, but he did not take it.

An investigator for the defense interviewed
Pollack and included the following in his report:

On September 24, 2008 at 11:20
PM, I called Hersh[a]ll Poll[a]ck . . . who agreed to talk with me.  Hersh[a]ll Poll[a]ck stated he was at
Danielle Wester and Jeremy Roth=s
trailer giving a birthday party for Summer, Danielle=s
daughter.  After the party Katy was
telling Jeremy what she was going to be taking.[2]  At that time, Katy=s mother
jumped in telling Jeremy what they were going to be taking.  Jeremy told Katy=s mother
that he and Katy will decide on what will be taken.  That=s when
Katy=s mother
started swinging at Jeremy and that=s when
Jeremy tried to defend himself by grabbing Katy=s mother=s arms
to keep Katy=s mother from hitting him
(Jeremy).  Dusty Owens got them separated
and escorted out of the house. 
Hersh[a]ll had grabbed Katy=s mother
from behind in a bear hug and carried her outside. . . . 













Scott-Roth contends that his trial counsel should
have impeached Pollack with the above report, arguing that it Ais
obvious from this [report] that Mr. Poll[a]ck was inside the house when the
events occurred and that there was no assaultive conduct by Appellant.@  The above report, however, does not state
that Pollack was inside the trailer, only that he was Aat@ the
trailer for a birthday party.  The report
also does not describe the conduct that transpired to cause the sound of
someone inside hitting the side of the trailer, which Pollack testified had
occurred before he went inside.  Rather
than contradict his testimony, the statement that Pollack gave to the defense
investigator tracks the testimony he gave at the revocation hearing regarding
what he saw when he entered the trailer and is consistent with the accounts
that the victims, Summer and Starr, gave regarding Pollack not being in the
trailer at the time the Athud@
occurred.[3]  Moreover, even if Pollack=s
statement in the above report could somehow be construed to conflict with the
testimony he gave at the revocation hearing, we cannot conceive of a sound
trial strategy that would have required Scott-Roth=s trial
counsel to attempt to impeach Pollack after he gave testimonyCthat
Summer, not Pollack, was the aggressor and that Pollack did not have anything
to drinkCfavorable
to Scott-Roth=s defense.  Based on the record before us, in light of
the strong presumption of reasonable professional assistance by defense
counsel, and in the absence of any opportunity for defense counsel to explain
his motives for not impeaching Pollack, we cannot say that Scott-Roth has met
his burden of showing by a preponderance of the evidence that his trial counsel=s
representation fell below the standard of prevailing professional norms.  See Strickland, 466 U.S. at 690, 104
S. Ct. at 2066; Thompson, 9 S.W.3d at 813; Edwards v. State, 280
S.W.3d 441, 445 (Tex. App.CFort
Worth 2009, pet. ref=d); see also Goodspeed
v. State, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (stating that Atrial
counsel should ordinarily be afforded an opportunity to explain his actions
before being denounced as ineffective@).

C.     Failure to Call Scott-Roth to Testify

Scott-Roth also argues that his trial counsel
rendered ineffective assistance by failing to call him to testify at the
revocation hearing to refute Starr=s
testimony.

At the hearing on the motion for new trial,
Scott-Roth testified on direct as follows:

Q.     Did
Mr. Trotter call you as a witness to give your version of the events as to what
happened at the trailer house?

 

A.     No,
he did not.

 

Q.     And
if he had, would you have testified that you did not assault Katheryn Starr?

 

A.     That=s correct.

 

Q.     What
was Mr. Trotter=s -- Why did Mr. Trotter
recommend to you, if you know, as to why you shouldn=t testify?

 








A.     At
that point it seemed like the -- the case was going pretty well in my favor and
thought that me being on the stand would only -- could only produce damning
testimony to my case. 

 

On
cross-examination, Scott-Roth testified as follows:

 

Q.     Sir,
I want you to think about the day that we had the hearing on your
revocation.  You walked in that door in
the courtroom and you were planning to testify that day, weren=t you?

 

A.     I
didn=t know at that time if I
was going to have to or not.

 

Q.     Okay.  But you were prepared to testify?

 

A.     Yes,
I was.

 

Q.     And
over the course of the hearing, you and your lawyer, Mr. Trotter, on at least
one occasion, maybe more, actually took a recess and went back in that jury
room and discussed the case, correct?

 

A.     We
did take a recess to do that, yes, we did.[4]

 

Q.     It=s not your testimony
today that you weren=t allowed to --

 

A.     No,
no.

 

Q.     -- to
testify?

 

A.     No.








Q.     You
made a decision not to take the stand, yourself, correct?  And you advised Mr. Trotter at that time
based on his advice you didn=t want to testify?

 

A.     Based
on Mr. Trotter=s advice, yes.

 

Q.     But
he never told you, you couldn=t testify?

 

A.     No.

                                                    

Q.     He
never told you he wasn=t going to allow you to
testify?

 

A.     No.

                                                    

Q.     In
fact, he told you, [i]t=s your option but I
advise against it, right?

 

A.     Correct.

 

Q.     So
you still could have taken the stand and told the Court everything you just
said?

 

A.     I
could have, yes. 

 

And on recross-examination, Scott-Roth
reaffirmed:

Q.     And
you could have taken the stand if you wanted to and explained all that [his
side of the story] to the Judge at the hearing, and you chose not to, right?

 

A.     If I
thought I needed to, yes. 

 








Here, the record from the hearing on the motion
for new trial reveals that Scott-Roth and his trial counsel came to an
agreement that Scott-Roth should not take the stand at the revocation hearing
based upon sound trial strategyCthat the
trial was going well and that his testimony would be detrimental.  Scott-Roth thus has not overcome the strong
presumption that his trial counsel performed within reasonable standards.  See Strickland, 466 U.S. at 690, 104
S. Ct. at 2066; Thompson, 9 S.W.3d at 813; Salas v. State, No.
14-02-00318-CR, 2003 WL 22769731, at *4 (Tex. App.CHouston
[14th Dist.] Nov. 25, 2003, pet. ref=d) (not
designated for publication) (holding that trial court did not abuse its
discretion by denying appellant=s motion
for new trial based on alleged violation of his right to testify).

D.     Ineffective Assistance Not Shown

Having disposed of both of Scott-Roth=s
ineffective assistance arguments, we overrule Scott-Roth=s first
point.

IV.  Revocation Can Be Upheld On Independent Basis








In his second point, Scott-Roth argues that the
trial court abused its discretion by denying his motion for new trial Abased on
the State=s witness tampering with a
crucial defense witness at the revocation hearing.@  We need not reach the merits of Scott-Roth=s
contention because, as pointed out by the State, Scott-Roth cannot show an
abuse of discretion on the part of the trial court by denying his motion for
new trial on his alleged witness tampering claim in light of an independent
basis on which to uphold the revocation. 
Here, Scott-Roth does not challenge the trial court=s
finding that he drank alcohol in violation of the conditions of his community
supervision.  Because this unchallenged
independent basis exists on which the trial court could have upheld Scott-Roth=s
revocation, we hold that the trial court did not abuse its discretion by
denying Scott-Roth=s motion for new trial.  See Smith v. State, 286 S.W.3d 333,
342B43 (Tex.
Crim. App. 2009) (holding that A[e]ven
assuming that the appellant could successfully challenge the failure to report
violation, the trial court was justified in revoking his deferred-adjudication
community supervision@ because grounds three and four
of the State=s motion to revoke, if found
true, remained sufficient to support the trial court=s
decision to proceed to an adjudication of the appellant=s
guilt).  We therefore overrule Scott-Roth=s second
point.

V.  Conclusion

Having overruled Scott-Roth=s two points,
we affirm the trial court=s judgment.

 

SUE
WALKER

JUSTICE

 

PANEL:  CAYCE, C.J.; LIVINGSTON and WALKER, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  September 17, 2009











[1]See Tex. R. App. P. 47.4.





[2]The Ataking@ mentioned here is in
reference to Starr and Scott-Roth=s attempting to divide their belongings.





[3]The Athud,@ according to Starr=s testimony, occurred
when Scott-Roth hit her in the temple with his fist, and her head popped back
and hit the wall of the trailer.





[4]After the State rested
during the revocation hearing, Scott-Roth=s trial counsel asked to take a break to determine
Awhere we go from here
now.@  After three defense witnesses testified,
Scott-Roth=s trial counsel asked for
a couple of minutes to discuss with his client what their next step would be
(i.e., to rest or to call another witness).