Alejandro Rodriguez MATA, Appellant

v.

The STATE of Texas.

No. PD–1724–04.

Court of Criminal Appeals of Texas.

June 6, 2007.

Rolando Garza, McAllen, for Appellant.

Amy Howell Alaniz, Asst. Crim. D.A., Edinberg, for State.

WOMACK, J., delivered the opinion of the Court, in which KELLER, P.J., and MEYERS, PRICE, KEASLER, HERVEY, and COCHRAN, JJ., joined.

The issue in this appeal is whether the record shows that the appellant was de-

nied his Sixth Amendment right to counsel when his attorney failed to object to the court's charge and the prosecutor's argument at the punishment stage of his trial. We shall reverse the judgment of the Court of Appeals on that point and remand the case to that court for its consideration of other points of error.

### Trial

An indictment alleged that the appellant murdered Omar Munoz and that he had been convicted previously of a felony. The issues of guilt and punishment were decided by a jury.

The jury received evidence that the appellant committed the murder on the night of December 31, 2000, outside the apartment where he lived with his brother, Leo. That evening Leo, Omar Munoz, and Dean Sanchez had gone out to buy some cocaine. On the way back to the apartment, Leo and Munoz had an argument. When they got out of the car at the apartment complex, they started fighting. Sanchez went to the apartment to ask the appellant to stop the fight. Instead, the appellant intervened to assist Leo. At some point Munoz fell to the ground, and witnesses saw the appellant stab Munoz repeatedly with a screwdriver. The appellant then directed Leo to go back to the apartment and find a knife. The appellant stabbed Munoz several more times, and fled from the scene with Leo. Munoz died from the multiple stab wounds. The jury found the appellant guilty of first-degree murder.

The appellant elected to have the jury assess his punishment. In such a case, Article 37.07, Section 4(a) of the Code of Criminal Procedure requires the court to charge the jury:

> Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-half of the sentence imposed or 30 years, whichever is less, without consideration of any good conduct time he may earn.... Eligibility for parole does not guarantee that parole will be granted.

It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

The district court gave the jury a charge that incorrectly included words that are shown in italics:

> Under the law applicable in this case, if the Defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served *plus any good conduct time earned* equals one-half of the sentence imposed or 30 years, whichever is less, without consideration of any good conduct time he may earn.

Neither party objected to the charge.

After the court read its charge to the jury, the State argued. The argument included:

> The other thing that's important in here there is a lot of language regarding your, you know, that he can get good time credit, that there is such a thing as parole. That's to let you know there is parole in Texas. What it is for the, okay, for you to do is go back and say, Let's do him. Give him this because he

will get out in this amount of time because you don't know how the parole laws will be applied today. They can change those laws in two years from now or ten years from now or fifteen years from now, but it is to let you know that they do exist and you may consider the existence of them, the fact that he may at some point be eligible for parole in considering the amount of time you think is appropriate in this case.

For example when you look at that pen packet you can see that he was sentenced and the date he was sentenced. And the date you'll see it was a sentence for five years on the burglary of a habitation, and possession of a prohibited weapon, and the date of that sentence. And this one you'll see on 0096–96–E revocation of Community Supervision, and he was originally placed on probation. . . . He committed a new offense. . . . And so you know he was sentenced to a period of five years in 1998, and this offense was committed on January 1st of the year 2001, less than five years later.

So you know parole does exist and in reality. And so that will help you understand those issues.

Counsel for the appellant made no objection to any part of the State's argument. Nor did counsel make any reference to good conduct time or the Texas parole laws during her own closing argument to the jury at the punishment phase.

A jury found the allegation of a prior felony conviction to be true, and it assessed punishment at ninety-nine years in prison and a $10,000 fine.

*Appeal*

On appeal, the appellant presented eight complaints that he had been denied effective assistance of counsel.

■■■ A claim of ineffective assistance of counsel is reviewed under standards articulated by the United States Supreme Court in *Strickland v. Washington.*[1] The *Strickland* standards first require, "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness."[2]

The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.[3]

Judicial scrutiny of counsel's performance must be highly deferential.[4]

This court has recognized an exception to the presumption of reasonable professional judgment when the complained-of conduct by trial counsel is of a type that no reasonably competent defense attorney

1. 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Hernandez v. State,* 988 S.W.2d 770 (Tex.Cr.App.1999).

2. *Strickland,* 466 U.S. at 687–88, 104 S.Ct. 2052.

3. *Id.* at 690, 104 S.Ct. 2052.

4. *Id.* at 695, 104 S.Ct. 2052.

would have engaged in for any reason.[5]

 *Strickland* set out another requirement. "Conflict of interest claims aside, actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice."[6] *Strickland* requires, "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."[7]

The Court of Appeals overruled the first four of the appellant's eight complaints of ineffective assistance of counsel.[8] On the fifth complaint, it held that the jury instructions on sentencing were clearly erroneous, such that trial counsel's failure to object to them satisfied the first prong of *Strickland*.[9] Without considering the prejudice factor, the Court took up the appellant's sixth complaint against his attorney's performance, which was that counsel did not object to the State's argument at the punishment stage.

The Court of Appeals held that the appellant satisfied the first *Strickland* requirement, because there was no conceivably legitimate basis for defense counsel's failure to object to the State's jury argument,[10] which "was improper in several respects" :

> First, the prosecutor stated a person convicted of murder *"can get good time credit."* ... [T]his argument is a misstatement of the law; a person convicted

of murder is required to serve one-half of his actual sentence (or thirty years) without regard for any good conduct time. Even if the trial judge had accurately instructed the jury, this argument would have been improper because the statutory instruction specifically prohibits the consideration of good conduct time in a particular case ...

> Second, the State specifically asked the jury to apply the law of parole to appellant ... This argument violates the express language of the statutory instruction: "You are not to consider the manner in which the parole law may be applied to this particular defendant."

> Third, ... the State circumvented [ (d) of Article 37.07, section 4] by specifically referring the jury to the pen packet and arguing "And so you know he was sentenced to a period of five years in 1998, and this offense was committed on January 1st of the year 2001, less than five years later. So you know parole does exist in *reality.*" This argument was clearly improper.[11]

The Court of Appeals found that prejudice was shown by the maximum sentence that the jury assessed.

> While the decedent's death was tragic and senseless, as are all murders, we do not find that the circumstances of the instant offense, in light of the decedent's illicit drug use and unlawful attack on Leo, to be especially heinous. The jury certainly could have believed the crime warranted the maximum sentence. On

---

**5.** *Vasquez v. State,* 830 S.W.2d 948, 951 (Tex. Cr.App.1992).

**6.** *Strickland,* 466 U.S. at 692, 104 S.Ct. 2052.

**7.** *Id.* at 694, 104 S.Ct. 2052.

**8.** *Mata v. State,* 141 S.W.3d 858, 864–66 (Tex. App.-Corpus Christi–Edinburg 2004).

**9.** *Id.* at 867.

**10.** *Id.* at 869.

**11.** *Id.* at 867–68 (citations omitted).

the other hand, we must accept the probability that the jury accepted the State's improper invitation to *"go back and say, Let's do him."* Consequently, our confidence in the punishment verdict is undermined by defense counsel's deficient performance. Therefore, we hold the [prejudice requirement] of *Strickland* has been met.[12]

"Additionally," and perhaps alternatively, the Court of Appeals held that "the cumulative effect" of counsel's failure to object to the State's argument "and the deficient conduct" in the fifth complaint "—failing to object to the erroneous good conduct time instruction—amounted to a denial of effective assistance of counsel at the punishment phase of appellant's trial."[13] Therefore it reversed the judgment of punishment and remanded for a new trial on punishment.

We granted review.

### *Review*

As we have said on more than one occasion, a reviewing court on direct appeal will rarely be able to fairly evaluate the merits of an ineffective-assistance claim, because the record on direct appeal is usually undeveloped and inadequately reflective of the reasons for defense counsel's actions at trial.[14]

The lack of a clear record usually will prevent the appellant from meeting the first part of the *Strickland* test, as the reasonableness of counsel's choices and motivations during trial can be proven deficient only through facts that do not normally appear in the appellate record.[15] It is not sufficient that the appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence. Rather, the record must affirmatively demonstrate trial counsel's alleged ineffectiveness.[16] The Thirteenth Court rightly acknowledged this crucial element of any *Strickland* analysis, yet concluded from the record that trial counsel's failure to object to the State's argument was so clearly contrary to his objective of having the jury assess the least amount of punishment possible against the appellant, that it was in fact "so outrageous that no competent attorney would have engaged in it."[17] Such a situation serves as an exception to the presumption that trial counsel's performance was reasonable.[18]

12. *Id.* at 869.

13. *Ibid.*

14. "As a general rule, one should *not* raise an issue of ineffective assistance of counsel on direct appeal. This is so because a trial record is generally insufficient to address claims of ineffective assistance of counsel in light of the 'strong presumption that (trial) counsel's conduct falls within the wide range of reasonable professional assistance.'" *Jackson v. State*, 877 S.W.2d 768, 772 (Tex.Cr.App.1994) (Baird, J., concurring). *Accord, e.g., Salinas v. State*, 163 S.W.3d 734, 740 (Tex.Cr.App. 2005); *Mallett v. State*, 65 S.W.3d 59, 62–63 (Tex.Cr.App.2001); *Thompson v. State*, 9 S.W.3d 808, 813–14 (Tex.Cr.App.1999); *Jackson v. State*, 973 S.W.2d 954, 957 (Tex.Cr. App.1998). *See Ex parte Duffy*, 607 S.W.2d 507, 513 (Tex.Cr.App.1980) ("Experience has taught us that in most instances where the claim of ineffective assistance of counsel is raised, the record on direct appeal is simply not in a shape, perhaps because of the very alleged ineffectiveness below, that would adequately reflect the failings of trial counsel.").

15. *Rylander v. State*, 101 S.W.3d 107, 110 (Tex.Cr.App.2003) (quoting *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex.Cr.App.2002)).

16. *Bone v. State*, 77 S.W.3d 828, 835 (Tex.Cr. App.2002).

17. *Mata*, 141 S.W.3d at 869 (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex.Cr.App. 2001)).

18. *Vasquez v. State*, 830 S.W.2d 948, 951 (Tex. Cr.App.1992); *Garcia v. State*, 57 S.W.3d 436, 440 (Tex.Cr.App.2001).

■ We disagree, however, that an examination of the record necessarily leads to such a narrow conclusion. Although the Court of Appeals found there to be no conceivable reason for trial counsel to have failed to object to the State's improper argument, the fact remains that the appellate record is still silent as to *why* trial counsel failed to so object. Therefore, the appellant has failed to rebut the presumption that trial counsel's decision was in some way—be it conceivable or not—reasonable.[19]

■ Indeed, the presumption that trial counsel's performance was reasonably based in sound trial strategy, coupled with the absence of any supporting evidence in the record of unreasonableness, compels a reviewing court to consider ways in which trial counsel's actions were within the bounds of professional norms.[20] We shall consider the points in the order in which the Court of Appeals addressed them.

■ First, on our review of the record, the prosecutor's statement to the jury that a person convicted of murder "can get good time credit" is not so clearly a misstatement of the law as the Court of Appeals claimed. A defendant convicted of murder is neither more nor less eligible to *receive* good conduct time credit during his or her sentence.[21] The only criteria for determining an inmate's eligibility to receive good time are his classification by the Texas Department of Criminal Justice and his conduct while incarcerated.[22] The

statutory instruction at issue here serves only to inform the jury of the limitations imposed upon the convicted person's ability to have his or her accrued good conduct time considered by a parole board in determining whether he should be eligible for release. It explicitly states that, whatever good conduct time the defendant may receive during his incarceration, no amount of good conduct time accrued will be calculated as part of his time served until he has served a sufficient amount of actual time.[23] It also informs the jury that such decisions are exclusively the province of the prison and parole board.[24] Thus, it was not a misstatement of law for the State to tell the jury that the appellant could "get good time credit," even if the State omitted the statutory condition under which his good time credit could be considered by a parole board.

■ Second, our review of the State's jury argument leads to a similar conclusion: the record does not clearly support the Court of Appeals' holding. It read the argument as "the State's improper invitation to '*go back and say, Let's do him.*'"[25] A reading that is at least as possible, and it seems to us more probable, is that it admonished the jury not to try to outguess or nullify the parole laws by "go[ing] back and say[ing], 'Let's do him. Give him *this* because he will get out in *this* amount of time,' because you don't know how the parole laws will be applied today. They can change those laws in two years from now or ten years from now or

---

**19.** *Rylander,* 101 S.W.3d at 110; *Thompson v. State,* 9 S.W.3d 808, 814 (Tex.Cr.App.1999).

**20.** *Garcia,* 57 S.W.3d at 440.

**21.** Gov't Code § 498.003(a).

**22.** *Id.,* §§ 498.002 & 498.003(a).

**23.** Code Crim. Proc. art. 37.07, § 4(a) ("... [the defendant] will not become eligible for parole until the actual time served equals one-

half of the sentence imposed or 30 years, whichever is less, without consideration of any good conduct time he may earn.").

**24.** *Id.* (" '... the application of these laws will depend on decisions made by prison and parole authorities.' ").

**25.** 141 S.W.3d, at 869.

fifteen years from now." In the context of the entire jury argument it can be reasonably inferred that the State was directing the jury to *comply* with the statute, by asking them to do precisely as the statute admonishes them to do: sentence the appellant with the knowledge that parole laws exist in Texas but without considering how those laws will affect him specifically. Reasonable minds could differ on this point, but that is precisely the problem with the Thirteenth Court's analysis. From the record as preserved for review, the statement is simply confusing. Possible confusion by the jury, however, is insufficient in and of itself to show that trial counsel's performance was ineffective for neglecting to address that confusion.[26] It is not appropriate for an appellate court to simply infer ineffective assistance based upon unclear portions of the record.

Finally, the Thirteenth Court held that it was improper for the State to have referred to the appellant's pen packet in his closing argument to the jury, when the prosecutor said: "And so you know he was sentenced to a period of five years in 1998, and this offense was committed on January 1st of the year 2001, less than five years later. So you know parole does exist in *reality*." (Emphasis in original). The Court held this to be a clear violation of Section 4(d): "This section does not permit the introduction of evidence on the operation of parole and good conduct laws." [27]

▮ Again, on our review of the record, it is questionable whether this was improper or not. While the State did clearly refer to the pen packet, the State's intention in doing so, as discussed above, was just as likely for the proper purpose of informing the jury that parole and good conduct time do exist in Texas, and that the existence of such laws may be considered as part of assessing punishment even if the operation of those laws may not. The appellant's pen packet was merely a simple and available example for the jury to understand that parole laws apply to all incarcerated persons, including the appellant. We note also from the record that the appellant's pen packet was not "introduced" as "evidence on the operation of parole and good conduct laws," as prohibited by the statute.[28] Rather, the pen packet had been introduced into evidence at the punishment phase in order to prove the alleged enhancing factors of the appellant's prior crimes.[29] We have held that, under Article 37.07, the admissibility of evidence in a non-capital trial is a matter of policy, including the policy of giving complete information to the jury to allow it to tailor an appropriate sentence for the defendant.[30] The result is that what is relevant for the jury to hear during punishment is determined by whatever is helpful to the jury.[31] While the appellant's pen packet does make reference to the dates on which he was paroled from his prior sentences, such information is clearly helpful to a jury whose job it is to assess punishment. While that information deals in a very

---

26. *Luquis*, 72 S.W.3d at 366–67; *See also Williams v. State*, 937 S.W.2d 479, 490 (Tex. Cr.App.1996) (juries assumed to have followed instructions and reversal unwarranted without evidence of actual jury confusion); *Boyde v. California*, 494 U.S. 370, 380, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990).

27. Code Crim. Proc. art. 37.07, § 4(d).

28. *Id.*

29. Code Crim. Proc. art. 37.07, § 3(a)(1).

30. *Erazo v. State*, 144 S.W.3d 487, 491 (Tex. Cr.App.2004); *Mendiola v. State*, 21 S.W.3d 282, 285 (Tex.Cr.App.2000).

31. *Rogers v. State*, 991 S.W.2d 263, 265 (Tex. Cr.App.1999).

broad sense with the concept of the "operation" of parole, it is at least arguable whether that kind of information is what is contemplated by the Section 4(d). At any rate, the appellant's pen packet is still admissible as evidence of his prior crimes.[32] At the very least, it is not clear that the State's reference to the appellant's pen packet in this instance necessitated an objection by appellant's trial counsel.

After reviewing the record, we hold that the appellant has not shown that his trial counsel's actions at the punishment phase to be so outrageous that no reasonable competent trial attorney would have done likewise. Nor do we find that the appellant rebutted the presumption that his trial counsel's actions were part of some sound trial strategy. Since the first prong of *Strickland* standard has clearly not been met, we need not address the second prong.

### *Conclusion*

The Thirteenth Court of Appeals' ruling that the appellant received ineffective assistance of counsel during the punishment phase of his trial is not supported by the record as preserved for appeal. We therefore reverse and remand for consideration of the appellant's other points of error.

JOHNSON and HOLCOMB, JJ., concurred in the judgment.

---

**32.** *Id.; Beck v. State,* 719 S.W.2d 205, 209 (Tex.Cr.App.1986).