**Opinion filed August 31, 2011**



## In The

# Eleventh Court of Appeals

_____

### Nos. 11-10-00374-CR & 11-10-00375-CR

_____

### JOHNATHAN BEDFORD NEWMAN, Appellant

### V.

### STATE OF TEXAS, Appellee

**On Appeal from the 266th District Court**

**Erath County, Texas**

**Trial Court Cause Nos. CR13433 & CR13434**

### M E M O R A N D U M   O P I N I O N

Johnathan Bedford Newman entered an open plea of guilty to two first-degree felony offenses for the manufacture or delivery of a controlled substance. The jury sentenced him to confinement in the Institutional Division of the Texas Department of Criminal Justice for life on both convictions. The jury also imposed a fine of $10,000 for both offenses. Appellant challenges his punishment in a single issue. We affirm.

*Background Facts*

Appellant's sole issue on appeal arises from the State's closing argument. He contends that his trial counsel rendered ineffective assistance by failing to object to an argument made by the prosecutor concerning how parole and good conduct time may affect appellant's period of incarceration.

The court's charge contained the following instruction pertaining to parole and good conduct time:

> Under the law applicable in this case, the Defendant, if sentenced to a term of imprisonment, may earn time off the period of incarceration imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.

> It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.

> Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served plus any good conduct time earned equals one-fourth of the sentence imposed or 15 years, whichever is less. Eligibility for parole does not guarantee that parole will be granted.

> It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

> You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may apply to this particular defendant.

Thus, the instruction in the court's charge tracked the language required by TEX. CODE CRIM. PROC. ANN. art. 37.07, sec. 4(b) (Vernon 2010).

During the State's initial closing argument, the prosecutor made a brief reference to the parole instruction contained in the court's charge by stating that appellant "becomes eligible for parole when his good conduct time, plus his actual time served equals a quarter of the sentence or fifteen years, whichever is less." The prosecutor also discussed the applicable range of

2

punishment for both offenses (five to ninety-nine years, or life) and appellant's criminal history (fourteen convictions in the previous seven years, including five felony drug convictions) during the State's initial closing argument.

Appellant's trial counsel also made reference to parole and good conduct time during his closing argument in his plea to the jury to give appellant a twenty-year sentence. In this regard, counsel suggested that the jury might "get the message to [appellant]" to turn his life around if he has the possibility of being eligible for parole after serving five years of a twenty-year sentence.

In the State's final closing argument, the prosecutor made the following statements regarding parole and good conduct time:

> [T]his defendant may earn – and I've underlined "earn", and that's an important word, time off of the sentence that you give him by the award of good conduct time. Prison authorities may award – and I want you to catch my theme here, good conduct time to a prisoner who exhibits good behavior, diligence in carrying out work – prison work assignments and attempts at rehabilitation, do you see the theme here? But it continues further, it is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole. Now we've got two mechanisms working in his favor. In this case he will not become eligible for parole until the time he has actually served, plus good conduct time equals one-fourth of the sentence imposed or fifteen years, whichever is less. Now, I want to help you understand what that means. What that means is rather than sit there for ten or fifteen or fourteen years, if you have good behavior and you exhibit that good behavior and diligence in carrying out prison work assignments and attempts at rehabilitation, remember when we talked about the things we would like to do when we punish someone, it's all there, if he avails himself of it, he can earn and be awarded. That, to me, is important to you as a juror in making the decision, when you think about it, you – you give him the mechanism, if you want to be released back out here with the rest of us, I know your record doesn't show us you can do that, but you convince someone else watching you closely for a period of time that you deserve to be among the rest of us, then you'll get out. But, wait, that's not all of it, when we talked about the difference life and ninety-nine years I told you about fifteen years, but there's a plus in there, and I want you to be aware of that, too, you can consider these things, actual time served, plus good conduct time, do you know what good conduct time is, if you get in there and behave, you get two days credit for each day you serve, so that fourth becomes an eighth all of a sudden if you're behaving yourself, so you just cut that fifteen in half, that's seven and a half, *if you twelve people give him ninety-nine years or life, in seven and a half, if he behaves himself, he'll walk out that door*. Now, is that an incentive to learn, to work at prison assignments, exhibit good behavior? Son, you've got the rest of your life in prison, but if you do the things we ask, in seven and half you can be released. Would that make someone want to hit the bricks, go to work? I think it would.

Or you can give him fifteen or twenty and let him sit there for a while and bounce back out and come out worse than when he went in (emphasis added).

Appellant bases his ineffective-assistance-of-counsel claim on the contention that trial counsel should have lodged an objection to the italicized portion of the above-quoted argument.

*Analysis*

To determine whether appellant's counsel rendered ineffective assistance at trial, we must first determine whether appellant has shown that counsel's representation fell below an objective standard of reasonableness and, if so, then determine whether there is a reasonable probability that the result of the proceeding would have been different but for counsel's errors. *Wiggins v. Smith*, 539 U.S. 510 (2003); *Strickland v. Washington*, 466 U.S. 668 (1984); *Andrews v. State*, 159 S.W.3d 98 (Tex. Crim. App. 2005); *Thompson v. State*, 9 S.W.3d 808 (Tex. Crim. App. 1999). This standard applies to claims of ineffective assistance of counsel in both the guilt/innocence phase and the punishment phase of noncapital trials. *Hernandez v. State*, 988 S.W.2d 770, 772-73 (Tex. Crim. App. 1999).

We must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and an appellant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. An allegation of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson*, 9 S.W.3d at 814. Under normal circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking as to overcome the presumption that counsel's conduct was reasonable and professional. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). Rarely will the record on direct appeal contain sufficient information to permit a reviewing court to fairly evaluate the merits of such a serious allegation. *Id.* In a majority of cases, the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel. *Id.*

As stated earlier, the challenged argument consisted of the following statement by the prosecutor: "[I]f you twelve people give him ninety-nine years or life, in seven and a half, if he

behaves himself, he'll walk out that door." When viewed in isolation, the challenged argument was improper. This is an incorrect statement of the law because parole eligibility does not guarantee release. *See* Article 37.07, § 4(b). Furthermore, the jury is explicitly prohibited from considering the extent to which good conduct time may be awarded to a particular defendant or the manner in which the parole law may be applied to a particular defendant. *Id*.

A complaint of improper jury argument is waived absent an objection at trial. *Threadgill v. State*, 146 S.W.3d 654, 667 (Tex. Crim. App. 2004). Accordingly, appellant is limited to presenting his improper-jury-argument complaint as an ineffective-assistance-of-counsel issue. This case is in the same procedural posture as the circumstances in *Mata v. State*, 226 S.W.3d 425, 430-31 (Tex. Crim. App. 2007). *Mata* also involved a claim on direct appeal of ineffective assistance of counsel arising from the failure of trial counsel to object to an allegedly improper jury argument concerning the application of parole and good conduct time. 226 S.W.3d at 427-28. Furthermore, the appellate record in *Mata* was also silent regarding trial counsel's reasoning for not objecting to the challenged argument.[1]

The Court of Criminal Appeals noted in *Mata* that a reviewing court on direct appeal will rarely be able to fairly evaluate the merits of an ineffective-assistance claim because the record on direct appeal is usually undeveloped and inadequately reflective of the reasons for defense counsel's actions at trial. *Id*. at 430. As stated by the court:

> The lack of a clear record usually will prevent the appellant from meeting the first part of the *Strickland* test, as the reasonableness of counsel's choices and motivations during trial can be proven deficient only through facts that do not normally appear in the appellate record. It is not sufficient that the appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence. Rather, the record must affirmatively demonstrate trial counsel's alleged ineffectiveness.

*Id*. (footnotes omitted). The court held in *Mata* that the appellant failed to rebut the presumption that trial counsel's actions were reasonable because the record was silent as to *why* he failed to object to the challenged argument. *Id*. at 431.

*Mata*'s reasoning is applicable to this case because the appellate record in this appeal is also silent regarding the basis for trial counsel's actions. Thus, appellant has failed to rebut the presumption that trial counsel's decision was reasonable. *See id*. In this regard, the facts in this

---

[1]In this regard, trial counsel's conduct at trial was not addressed in a motion for new trial.

case are distinguishable from those in *Branch v. State*, 335 S.W.3d 893, 904 (Tex. App.—Austin 2011, pet. filed), because appellant did not present his ineffective-assistance claim in a motion for new trial that would have provided an avenue for exploring the reasons for trial counsel's action.

Furthermore, the improper argument that appellant challenges was not incurable and was in fact "cured" by the written instructions contained in the court's charge. In this regard, an instruction to disregard improper jury argument will cure the error in most instances. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). The court's charge contained the correct rules pertaining to the manner in which the jury should consider the application of parole and good conduct time to appellant's sentence. We presume the jury followed the court's instructions. *Colburn v. State*, 966 S.W.2d 511, 519-20 (Tex. Crim. App. 1998).

Under the second prong of *Strickland*, appellant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Evidence was offered that the underlying offenses were based on appellant possessing 25.84 grams of methamphetamine on one occasion[2] and 6.34 grams of methamphetamine on another occasion. Appellant's criminal record included a state jail felony conviction for drug possession in 2007, two state jail felony convictions for drug possession in 2005, a misdemeanor drug possession conviction in 2003, a misdemeanor conviction for possessing a prohibited weapon in 2005, three misdemeanor drug possession convictions in 2005, a driving-while-intoxicated conviction in 2007, a driving-while-license-invalid conviction in 2007, a misdemeanor theft conviction in 2003, and a misdemeanor burglary-of-a-vehicle conviction in 2005. Given the presence of the correct statement of the law contained in the court's charge, the seriousness of the underlying offenses, and appellant's lengthy criminal record, the appellate record does not show a reasonable probability that the result would have different. Appellant's sole issue is overruled.

---

[2]In addition to possessing 25.84 grams of methamphetamine on this occasion, appellant also possessed 6.24 grams of cocaine.

*This Court's Ruling*

The judgments of the trial court are affirmed.


JIM R. WRIGHT

CHIEF JUSTICE


August 31, 2011

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.