

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

## NO. 02-16-00407-CR

LAVIRL CLEVELAND ALFORD                                             APPELLANT

V.

THE STATE OF TEXAS                                                          STATE

----------

### FROM THE 78TH DISTRICT COURT OF WICHITA COUNTY
### TRIAL COURT NO. 56,118-B

----------

## MEMORANDUM OPINION[1]

----------

Lavirl Cleveland Alford pleaded guilty to possession of less than one gram of cocaine, a controlled substance. Tex. Health & Safety Code Ann. § 481.115(b) (West 2017). After hearing evidence, the trial court assessed her punishment at 18 months' incarceration in the State Jail Division. Tex. Penal Code Ann.

---

[1]*See* Tex. R. App. P. 47.4.

§ 12.35(a) (West Supp. 2017). Alford contends that her trial counsel rendered ineffective assistance; we affirm.

## Alford's Sole Point

In Alford's sole point, she asserts that her defense counsel was ineffective by failing to ask one of her witnesses—her psychiatrist, Dr. Bryan Wieck—a series of questions. Although defense counsel called Dr. Wieck to testify, Alford complains that counsel failed to ask him a number of questions about her post-traumatic stress disorder (PTSD). For example, Alford complains that defense counsel never asked Dr. Wieck (1) on what basis he diagnosed her with PTSD; (2) what the DSM V criteria are for diagnosing somebody with PTSD; (3) what symptoms Alford manifested due to her PTSD; (4) whether her PTSD was a lifelong illness; (5) how he treated her for PTSD or what specific treatment she needed; (6) because of her PTSD, what types of things would trigger her to react inappropriately; and (7) why the traumas that caused her PTSD, from a psychiatric perspective, were categorically different from those difficulties that people normally encounter. In short, Alford asserts that defense counsel did not properly utilize and question Dr. Wieck as a defense witness and, in the process, rendered ineffective assistance.

Given the relief Alford was seeking at trial and still seeks here on appeal, before addressing her argument we note the precarious procedural posture in which she found herself.

2

At the unitary trial,[2] defense counsel argued in favor of probation and in-patient services.[3] But because she had a prior felony conviction, Alford would not have been eligible for jury-recommended probation had she gone to a jury trial rather than pleaded guilty, something the record shows her counsel knew. *See* Tex. Code Crim. Proc. Ann. art. 42A.055(b)(1) (West Supp. 2017).

Similarly, because Alford was pleading guilty to a state-jail felony, she was not eligible for judge-ordered regular probation. *See id.* art. 42A.053(c)(2) (West Supp. 2017).

But she was eligible for judge-ordered deferred-adjudication probation, which, in his closing argument, defense counsel asked the trial court to impose. *See id.* arts. 42A.101(a), 42A.102 (West Supp. 2017). From this, and from defense counsel's acknowledgment that "she can't get it otherwise," we infer that defense counsel knew that only the trial court could award Alford this type of probation.[4]

---

[2]Once a guilty plea is entered, as in this case, the procedure becomes a "unitary trial," in which the issues of guilt and punishment are tried at the same time. *See Lopez v. State*, 96 S.W.3d 406, 414 (Tex. App.—Austin 2002, pet. ref'd). Although Alford complains about a punishment issue, technically she had a unitary trial.

[3]The terms "probation" and "community supervision" are synonymous and are generally used interchangeably. *Prevato v. State*, 77 S.W.3d 317, 317 n.1 (Tex. App.—Houston [14th Dist.] 2002, no pet.). We will use the simpler term "probation" throughout this opinion.

[4]That is, as a procedural matter the legislature had already foreclosed regular probation as an option, either from a jury or the judge. For whatever reason, the legislature did leave open the deferred-adjudication-probation

For the reasons set out below, we hold that because the record does not reflect why defense counsel did not ask Alford's proposed list of questions, she has not shown that his performance was deficient. And assuming that she could have shown deficient performance, we further hold that she has not shown any prejudice.

### Standard of review: ineffective assistance of counsel

To establish ineffective assistance of counsel, an appellant must show by a preponderance of the evidence that (1) her counsel's representation was deficient and (2) the deficiency prejudiced her defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013); *Hernandez v. State*, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999) (applying *Strickland* to punishment trial); *Satterfield v. State*, 367 S.W.3d 868, 871 n.4 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd) (applying *Strickland* to a unitary proceeding); *see Stephens v. State*, 15 S.W.3d 278, 279 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (stating that *Strickland* applies to all stages of a criminal trial and applying *Strickland* to a case in which the defendant pleaded *nolo contendere*), *cert. denied*, 531 U.S. 1169 (2001). An ineffective-assistance claim must be "firmly founded in the record," and "the record must affirmatively demonstrate" the claim's meritorious nature. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

---

possibility. By pleading guilty, then, Alford apparently hoped that she could persuade the judge to let her pass through the eye of this very thin needle.

4

Direct appeal is usually an inadequate vehicle for raising an ineffective-assistance-of-counsel claim because the record is generally undeveloped. *Menefield v. State*, 363 S.W.3d 591, 592–93 (Tex. Crim. App. 2012); *Thompson*, 9 S.W.3d at 813–14. In evaluating counsel's effectiveness under *Strickland*'s deficient-performance prong, we look to the representation's totality and the case's particular circumstances. *Thompson*, 9 S.W.3d at 813. The issue is whether counsel's alleged error was reasonable under all the circumstances and prevailing professional norms at the time. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065; *Nava*, 415 S.W.3d at 307. Our review is highly deferential, and we indulge a strong presumption that counsel's conduct was not deficient. *Nava*, 415 S.W.3d at 307–08.

We may not infer ineffective assistance simply based on record ambiguities or when counsel's reasons for failing to do something do not appear in the record. *Menefield*, 363 S.W.3d at 593; *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007). Trial counsel "should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Menefield*, 363 S.W.3d at 593. If trial counsel is not given that opportunity, we should not conclude that counsel's performance was deficient unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Nava*, 415 S.W.3d at 308.

*Strickland*'s "prejudice" prong requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial—that is, a trial with

5

a reliable result. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. In other words, an appellant must show there is a reasonable probability that, without the deficient performance, the proceeding's result would have been different. *Id.* at 694, 104 S. Ct. at 2068; *Nava*, 415 S.W.3d at 308. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Nava*, 415 S.W.3d at 308. Our inquiry's ultimate focus must be on the challenged proceeding's fundamental fairness. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2070. "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 696, 104 S. Ct. at 2069.

## Discussion

### *No deficient performance*

Our record does not contain defense counsel's explanations for not asking Alford's proposed questions. As will be seen below in connection with analyzing the second *Strickland* prong, defense counsel's conduct was a far cry from being "so outrageous that no competent attorney would have engaged in it." *See Nava*, 415 S.W.3d at 308 (quoting *Menefield*, 363 S.W.3d at 593). We hold that Alford has not shown that defense counsel's performance was deficient. *See id.* at 307; *see also Menefield*, 363 S.W.3d at 593.

### *Even assuming deficient performance, prejudice not shown*

Even if we assume that defense counsel acted deficiently, Alford has not shown any resulting prejudice.

6

Alford arrived twelve minutes late for her own plea hearing. The trial court stated on the record that it "had already noted" her tardiness. Alford then pleaded guilty before the court, something she had to do to be eligible for deferred-adjudication probation. *See* Tex. Code Crim. Proc. Ann. art. 42A.101(a). Alford signed a confession that the trial court admitted into evidence. After the trial court accepted Alford's confession, at the prosecutor's request and with defense counsel's agreement, the hearing proceeded as a unitary one "to allow [the judge] to make whatever decision [he was] to make at the end."

The State's first witness was Officer Jaeden Esquibel, who arrested Alford on April 6, 2015. Officer Esquibel responded to a call involving a disturbance between a male and female, and as he approached the scene he saw the two arguing on a sidewalk; before making actual contact with them, he saw Alford drop a vial from her right hand, after which the man she was with kicked it about four feet away into the grass. The vial contained .09 grams of cocaine. The State then introduced Alford's prior convictions.

Among them were two prior felony convictions. There was one from 2003 for forgery, a state-jail felony that was punished as a class A misdemeanor.[5] There was another in 2008 for possession of less than one gram of cocaine, a state-jail felony for which she received a sentence of 180 days in a

---

[5]Under certain circumstances, section 12.44 of the penal code authorizes a defendant convicted of a state-jail felony to be punished for a class A misdemeanor. *See* Tex. Penal Code Ann. § 12.44 (West 2011).

state-jail facility, the minimum term of incarceration. *See* Tex. Penal Code Ann. § 12.35(a). The charge to which she pleaded guilty here marked Alford's third state-jail felony. On this third occasion, she was requesting deferred-adjudication probation, a more favorable treatment than her earlier state-jail felony sentences.[6]

In addition to her felony convictions, Alford had numerous misdemeanor convictions: (1) a 1999 conviction for reckless driving, (2) a 1999 conviction for interference with the duties of a public servant, (3–5) three convictions—two in 2003 and one in 2015—for theft in the amount of $50 to $500, (6–7) two convictions—one in 2003 and the other in 2013—for burglary of a vehicle, and (8–10) three convictions—one in 2011 and the two others in 2013—for possession of less than two ounces of marijuana. These ten misdemeanor convictions added nothing to help and did much to prejudice Alford's chances of being placed on deferred-adjudication probation.

Moreover, Alford had previously been placed—unsuccessfully—on regular probation: in October 2013, Alford received two years' probation for her burglary-of-a-vehicle conviction, only to see it revoked in April 2015. This fact further weighed against her being allowed deferred-adjudication probation.

---

[6]A repeat offender can usually expect a more severe punishment with each successive offense. *See id.* § 12.42 ("Penalties for Repeat and Habitual Felony Offenders on Trial for First, Second, or Third Degree Felony"), § 12.425 ("Penalties for Repeat and Habitual Felony Offenders on Trial for State Jail Felony") (West Supp. 2017).

After introducing evidence of Alford's prior convictions, the State rested.

Defense counsel first called Dr. Wieck, Alford's treating psychiatrist for more than a decade, who had diagnosed her with major depressive disorder, PTSD, and attention-deficit disorder (ADD). He explained that persons with PTSD and depression may also suffer from substance abuse.

Dr. Wieck had concerns about sending Alford to prison: "My primary concerns are about her access to mental health care while there, her ability to tolerate the stress of that environment, possibly, without adequate treatment. . . . [S]ome of it is based on what we've observed as very limited stress tolerance over the past few years, specifically." If she was sent to prison, he strongly thought that Alford had the potential for decompensation.[7]

When asked how the court should address Alford's situation, Dr. Wieck advocated for "a significant therapeutic component as opposed to just punitive, that would be ideal." Although he did not know what resources the court had, he suggested an in-patient rehabilitation facility with mental-health psychiatric components, at least early in the process.

Dr. Wieck further testified that Alford was currently taking certain psychotropic medications designed to treat her conditions. In a prison setting, he was concerned that Alford would not get those medications.

---

[7]"The appearance or exacerbation of a mental disorder due to failure of defense mechanisms." *Decompensation*, Stedman's Medical Dictionary (28th ed. 2006). The probation officer who later testified defined "decompensate" to mean "to make [the patient's condition] worse."

Dr. Wieck acknowledged that Alford had been convicted of numerous offenses while under his care and that on one occasion Alford had been placed on probation and then had her probation revoked. "Revocation" meant to Dr. Wieck that "the prior order was defied or didn't work." Dr. Wieck also conceded that Alford committed three felonies while under his care and, after watching the police video, agreed that regardless of whether she suffered from PTSD or ADD, Alford knew it was wrong to have cocaine.

Dr. Wieck additionally testified that Alford reported seeing traumatic events. She had seen her son shot and blinded in one eye. In 2014, Alford found her boyfriend after a car had run over him and dragged him, causing "multiple fractures and significant loss of skin." Dr. Wieck was also aware that Alford had witnessed a shooting in 2001. He was concerned about Alford's ability to handle stress, noting that her panic attacks were easily triggered, that she was high-strung, and that she "goes off easily." Dr. Wieck did not know if more mental-health treatment would help Alford, but he remained hopeful. Despite treating Alford for approximately thirteen years, he did not know whether she had ever gone to a prolonged in-patient treatment facility to detoxify or to get help for her substance-abuse and mental-health dual diagnosis.

Defense counsel then called Tami Dorner, a counselor in the substance-abuse department at a Helen Farabee Center.[8] A week before trial, the Farabee

---

[8]Serving North Texas, "Helen Farabee Centers specialize in providing access to community-based treatment and support services for persons with

10

Center had diagnosed Alford with severe alcohol-use disorder, cannabis-use disorder, and methamphetamine-use disorder. The Farabee Center's recommendations were for detox and concurrent in-patient substance-abuse and psychiatric treatment at Red River Hospital. Dorner explained that the Farabee Center provided out-patient treatment and that if a client needed a higher level of care, the Farabee Center referred the client to a residential treatment facility. Although not previously available, Red River Hospital had recently opened a chemical-dependency unit. Dorner stated that Alford reported to the Farabee Center that she had received some sort of substance-abuse treatment in 2005. Dorner expressed concern that incarcerated people might not get needed mental-illness and substance-abuse care. Reviewing Alford's history, Dorner did not see any court-ordered treatment, so she advocated that the trial court consider in-patient mental-health and substance-abuse care, assuring the court that the Red River Hospital could take Alford.

Defense counsel's third witness was Sarah Peeler, an adult-probation officer who worked on a specialized mental-health caseload and was familiar with substance-abuse issues and how they were treated in the probation department. Many of her clients had a dual diagnosis of substance-abuse and mental-health

---

severe, persistent forms of mental illness, substance abuse and persons with intellectual and developmental disabilities." Helen Farabee Centers, https://www.helenfarabee.org (last visited March 6, 2018).

issues. Although Peeler had not personally supervised Alford, she was familiar with Alford's issues from talking with defense counsel.

Peeler was aware of two facilities in Texas that took dual-diagnosis clients for treatment programs lasting from six to nine months—the Jefferson County Women's Center in Beaumont and the Concho Valley Community Corrections Facility in San Angelo. A third possibility was the substance-abuse-felony-punishment facility (SAFPF) operated by the Texas Department of Criminal Justice Institutional Division. Peeler opined that if a client decompensated due to incarceration, incarceration would not be best for the client. Peeler also acknowledged that the probation department might not be equipped to appropriately address Alford's particular needs.

The final defense witness was Kevin Cowley, who investigated the 2001 shooting that Alford witnessed. The shooter was her then-ex-husband, Jimmy Alford, and the victim was Thompson Asbury, Alford's boyfriend. Alford saw her ex-husband shoot Asbury in the left upper chest with a large revolver.

Many times throughout the proceedings, Alford caused interruptions, something that—after multiple warnings—culminated in the court's instructing her to leave the courtroom during the prosecutor's final arguments. (The record does suggest that the prosecutor, by his conduct and arguments, engaged in a good deal of what might best be described as "bear baiting." The record also shows, however, that Alford was incapable of resisting the bait.) In the context of a defendant's asking for deferred-adjudication probation and seeking to be placed

12

in a facility for extended in-patient treatment, a demonstrated ability to follow rules would undoubtedly have helped Alford's cause; yet even within the limited context of her plea hearing, Alford could not do so, despite the fact that she had received psychiatric treatment for over a decade. Whatever the explanation, the record as a whole shows that Alford was a poor candidate for deferred-adjudication probation.

Thus assuming, without deciding, that defense counsel made professional errors—which assumes a great deal on this record—we hold that Alford has not shown a reasonable probability that, without the allegedly deficient performance, the proceeding's result would have been any different. *See Nava*, 415 S.W.3d at 307–08.

We overrule Alford's sole issue.

## Conclusion

Having overruled Alford's sole issue, we affirm the trial court's judgment.

/s/ Elizabeth Kerr
ELIZABETH KERR
JUSTICE

PANEL:  WALKER, MEIER, and KERR, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  March 8, 2018