02-08-136-CR















 

 

 

COURT OF APPEALS

SECOND
DISTRICT OF TEXAS

FORT WORTH

 

NO. 02-08-00136-CR

 

 


 
 
 STEVEN WAYNE  COOPER A/K/A STEVE COOPER
 
 
  
 
 
 APPELLANT
 
 


                                                                                                                             

V.

 


 
 
 THE STATE OF TEXAS
 
 
  
 
 
 STATE
 
 


 

 

------------

 

FROM THE 355TH
 DISTRICT COURT OF HOOD
COUNTY

 

------------

 

OPINION

 

------------

I. 
Introduction

In three
issues, Appellant Steven Wayne Cooper a/k/a Steve Cooper appeals his
convictions and sentences for aggravated assault with a deadly weapon and
aggravated assault.  We affirm.          

 

 

II. 
Factual and Procedural History

A. 
Factual Background

          On June 14, 2007, Evelyn Cooper went
to the Hood County Sheriff’s Office to report threats Cooper had made to her
the night before.  Hood County Captain
Clint Pullin took her report and advised her to seek a protective order.  Cooper was waiting for Evelyn when she came
home. 

          The next day, Nancy and Ronald Lock encountered
Evelyn and Cooper at a convenience store.  Evelyn was bloody and severely beaten up, she
was crying blood, and “[h]er whole face was black and blue.”  Ronald did not recognize her at first, although
he had known Evelyn most of his life.  Photographs
of Evelyn’s injuries were admitted and published to the jury.  She suffered fractures of her facial
bones and both of her eyes were blackened. 

Evelyn
told Nancy that Cooper was inside the house when she came home and that he told
her she was going to die and that he knew from watching forensic television
shows how to get away with it.  Ronald
said that Evelyn told them that Cooper tied her to a chair, beat on her with a
pipe, hit her in the face and ribs, and only untied her because he had run out
of beer and needed to go to the convenience store. 

Evelyn
stated that she could not swear that Cooper hit her with a pipe, but he did hit
her in the face with his fist and tie her up with electrical wire and duct
tape, and he told her that she was going to be with her mother, who had passed
away two years before.  She testified
that Cooper had a drinking problem and would sometimes become abusive, although
he never hit her until June 2007.[1]
Evelyn also testified that Cooper had some mental problems—he was bipolar and
schizophrenic—and that, when he drank, the mental problems worsened. 

          Ronald fought Cooper to keep him away
from Evelyn.  After Ronald “took him down
to the ground,” Cooper got up, got into his car, and took off.  Lieutenant Bill Haynes testified that authorities
found Cooper’s abandoned vehicle and had to track Cooper with a police dog.  Cooper fought the deputies as they tried to
take him into custody.  The deputies
found a rifle in the back seat of Cooper’s vehicle during an inventory search. 

B. 
Procedural Background

          In September 2007, a grand jury
returned an indictment on Cooper for the following alleged acts, occurring on
or about June 15, 2007:

·       
Count 1:  Intentionally or
knowingly causing bodily injury to Evelyn Cooper by striking her in her stomach
and left breast area while using or exhibiting a deadly weapon (metal pipe); 

 

·       
Count 2:  Intentionally or
knowingly causing serious bodily injury to Evelyn Cooper by repeatedly striking
her in the face and head with his fists. 

 

·       
Count 3:  Intentionally or
knowingly possessing a firearm after he had been convicted of felony DWI on
April 1, 2004; 

 

·       
Count 4:  Intentionally fleeing,
using a vehicle, from James Cromwell, a peace officer who was attempting to
lawfully arrest or detain him. 

 

The
indictment also included one enhancement paragraph (an August 10, 2004 felony
DWI conviction) and three habitual offender counts:  a February 10, 1995 felony criminal mischief
conviction; a May 7, 1991 felony aggravated assault with a deadly weapon
conviction; and a May 24, 1991 felony bodily injury to a child conviction.  

          In October 2007, the trial court found
Cooper incompetent and sent him to a state hospital to regain competency for
trial.  Once returned to the trial court,
Cooper pleaded guilty to counts 1 and 2, and the jury assessed sixty years’
confinement for count 1, after finding that a deadly weapon had been used, and
twenty-five years’ confinement for count 2.  The trial court set the sentences to run
concurrently.  

III. 
Mental Competence

In his first two issues, Cooper
argues that the trial court erred by accepting his guilty plea and by trying
him without first determining that he was competent to stand trial. 

A.  Due Process

Under the
Due Process Clause of the Fourteenth Amendment, a trial court may not accept a
criminal defendant’s guilty plea unless that defendant is legally competent to
make such a plea.  See Godinez v. Moran, 509 U.S. 389, 400, 113 S. Ct. 2680, 2687
(1993).  And once a defendant has been
adjudged incompetent, “on the return of a defendant to the court, the court
shall make a determination with regard to the defendant’s competency to stand
trial.”  Tex. Code Crim. Proc. Ann. art.
46B.084(a) (Vernon Supp. 2010); see also Bradford
v. State, 172 S.W.3d 1, 4–6 (Tex. App.—Fort Worth 2005, order) (abating
appeal and remanding case to the trial court to make a judicial determination
regarding appellant’s competency at the time of the adjudication hearing), disp. on merits,
No. 02-04-00414-CR, 2005 WL 1926409 (Tex. App.—Fort Worth Aug. 11, 2005, no
pet.) (mem. op., not designated for publication).  See generally
Thomas v. State, No. AP-75218, 2008 WL 4531976, at *13–14 (Tex. Crim. App.
Oct. 8, 2008) (not designated for publication) (noting that while a better
practice is for the trial court to make the competency determination prior to
trial, a retrospective one will suffice). 


          The record must contain a judgment,
order, docket entry, or other evidence that the trial court actually made a
determination of competency.  Schaffer v. State, 583 S.W.2d 627, 631
(Tex. Crim. App. 1979) (op. on reh’g); see
also Johnson v. State, Nos. 02-05-00205-CR, 02-05-00206-CR, 2006 WL
2578033, at *5 (Tex. App.—Fort Worth June 22, 2006, order) (not designated for
publication) (“Letters from a psychiatrist or psychiatric evaluations
containing recitations of competency are evidentiary only; they cannot operate
as a substitute for a judicial fact finding of a defendant’s competency to
stand trial.”), disp. on merits, 2006
WL 2310085 (Tex. App.—Fort Worth Dec. 6, 2006, pet. ref’d) (mem. op., not
designated for publication).  Compare Fuller v. State, 11 S.W.3d 393,
395 (Tex. App.—Texarkana 2000, order) (abating for judicial determination of
competency when record contained no judgment, order, docket sheet entry, or
other evidence that the trial court ever made a determination of appellant’s
competency to stand trial), disp. on
merits, 30 S.W.3d 441 (Tex. App.—Texarkana 2000, pet. ref’d), with Bell v. State, 814 S.W.2d 229, 233
(Tex. App.—Houston [1st Dist.] 1991, pet. ref’d) (holding that recitations of
competency in judgments of prior convictions for DWI were sufficient to allow
State to use them to raise current DWI charge to a third-degree felony).        

B.  Competence
Determination by the Trial Court 

          1.  Pretrial

          In September 2007, a week after the
grand jury filed Cooper’s indictment, Cooper’s original trial counsel, Pamela
Walker, filed a motion suggesting incompetency and a request for examination.  See
Tex. Code Crim. Proc. Ann. art. 46B.004 (Vernon 2006).  The trial court issued an order for William B.
Norman, Ph.D. to conduct an examination regarding incompetency and, after
considering Dr. Norman’s report, issued a judgment finding Cooper incompetent
and committing him to a mental hospital until he could attain competency to stand
trial.  See id. arts. 46B.005 (Vernon 2006), .073 (Vernon Supp. 2010).

          In February 2008, Walker filed a
motion to withdraw as counsel, stating that she was unable to effectively
communicate with Cooper in order to provide him with adequate representation.  As examples of this and other good cause for
granting the motion, Walker listed:  (1)
Cooper’s regular and continual attempts to fire her via written correspondence
“due to a delusional belief that [she was] against him”; (2) Dr. Norman’s
competency evaluation report, reflecting that Cooper “has definite problems
interacting with women”; (3) the psychiatric evaluation report by Dr. Dori
Johnson, one of the North Texas State Hospital doctors, in which Cooper
indicated that he had reservations about Walker’s willingness and ability to
handle his case effectively due to Walker being the same gender as his alleged
victim; and (4) Cooper’s violent and unpredictable acts while she represented
him, to the extent that her ability to represent him was compromised and caused
her concern for her safety—on two occasions, he sent correspondence to her
office that was covered in his blood.  

Walker
attached a copy of Dr. Norman’s competency evaluation and a copy of Dr.
Johnson’s psychiatric report to her motion. 
No other copies of these reports were included in the record.  Cf. Tex.
Code Crim. Proc. Ann. art. 46B.079 (Vernon Supp. 2010).  

Dr.
Norman’s October 3, 2007 competency evaluation indicated that Cooper was not
competent to stand trial, that Cooper suffered from bipolar disorder with
psychosis and alcohol abuse, and that Cooper manifested evidence of a thought
disorder, delusional thinking, and hallucinations.  At one point, Dr. Norman noted, “I would like
to point out that I believe that some of this gentleman’s reported symptomology
is manipulative, but without a doubt, he does suffer with an illness of
psychotic proportion.” 

Dr.
Johnson’s evaluation, conducted mid-January 2008, indicated that Cooper had
regained competency to stand trial.  She
reported that while confined to the mental hospital, Cooper received
psychiatric treatment in the form of psychotropic medications, psychosocial
rehabilitation, and formal competency training.  She also reported that Cooper appeared to be
feigning or exaggerating some of his symptoms, providing specific examples:

·       
While Cooper consistently reported experiencing auditory and visual
hallucinations, his accounts varied, and neither his treatment team nor unit
staff ever observed him outwardly responding to internal stimuli.[2]  Cooper’s behavior throughout his stay on the
competency unit was continuously exemplary and paradoxical with his behavior
while meeting with his treatment team, as well as inconsistent with his
reported symptoms of psychosis.

 

·       
Cooper told one of the nurses that he purposely performed poorly on a
written competency test, stating, “I could have done better, but I’m not sure
if it’s a good idea.”  He told the nurse
that he had heard from other patients that there was a way to stay at the
hospital rather than doing jail time.

 

·       
There was no evidence of current memory, intellectual, or psychological
impairment that would prevent Cooper from being able to assist in his defense
if he chose to do so.

 

·       
Cooper demonstrated that he understood the four plea options:  Guilty, not guilty, not guilty by reason of
insanity, and no contest.  He also
demonstrated that he understood the concept of a plea bargain and that he would
be the one to decide whether to accept one, as well as the rights that would be
forfeited if he accepted a plea bargain.

 

·       
Dr. Johnson concluded that Cooper was a “less than perfect defendant,”
and would be difficult to work with because of his “attempts to avoid
prosecution and be psychiatrically hospitalized.”

 

Dr Johnson
recommended that Cooper’s defense attorney “should encourage him to be as
forthcoming as possible with an emphasis on how this approach is beneficial to
him and the possible negative consequences of exaggerating or feigning
impairment.”  She also added that Cooper
“is not expected to regress in psychological functioning, but it is possible
that he will continue his attempts to feign or exaggerate psychological
deficits.” 

2.  Guilty
Plea and Punishment Trial

Cooper’s
two-day trial began April 7, 2008.  The
trial court had the opportunity to evaluate Cooper’s competence before trial in
light of both competency reports and Walker’s allegations in her motion to
withdraw and by observing him during the plea admonishments.         

During the
admonishments, the trial court asked Cooper if he wanted to enter a plea of
guilty to the charges against him, and Cooper said yes.  James Winegardner, who was appointed as
counsel when the trial court allowed Walker to withdraw, added, “Yes, Your
Honor.  It says there counts 1 and count
2.  I believe that count 3 and 4 will be
waived if we plead guilty to count[s] 1 and 2,”[3]
and Cooper again said, “Yes.”  The trial
court then explained count 1 of the indictment and asked Cooper if he
understood.  Cooper assented and stated
that his plea was guilty.  The trial
court then explained count 2 of the indictment and asked Cooper if he
understood.  Again, Cooper assented and
stated that his plea was guilty. 

          Next, the trial court asked Cooper if
he had gone over the enhancement and habitual paragraphs with Winegardner.  When Cooper said yes, the trial court
proceeded to explain each paragraph, asking after each paragraph if Cooper
understood.  Cooper said yes and pleaded
true to each, although he added to habitual count 3 that he had pleaded guilty
to the bodily-injury-to-a-child charge but that he was not actually guilty.  The trial court then explained that if Cooper
decided to enter a plea of guilty before the jury, he would instruct the jury
to find Cooper guilty.  Cooper said that
he understood.  

The trial
court then asked Cooper if he was entering his guilty plea freely and voluntarily,
and Cooper said yes.  Cooper said no when
the trial court asked him whether anybody had forced him, coerced him, or made
any promises to him to get him to enter that plea.  The trial court and Cooper then had the
following conversation:

THE COURT:  All right. 
So are you entering a plea of guilty before the jury that’s selected
here because you are, in fact, guilty of that offense?

 

DEFENDANT:  Yes, sir.

 

THE COURT:  All right. 
And for no other reason?

 

DEFENDANT:  No, sir.

 

THE COURT:  All right. 
Now, I want to tell you this, too, that based upon your plea before me
here to this enhancement paragraph and these habitual counts, that the
punishment range for this offense now is for—is by confinement in the
Institutional Division of Texas Department of Criminal Justice for any—for life
or for any term of not less than 25 years nor more than 99 years.  Now, do you understand that range of
punishment for the offense?

 

DEFENDANT:  No, sir. 
Could you explain that to me again?

 

THE COURT:  Sure. 
The range of punishment for the offense to which you pled guilty here—  

 

DEFENDANT:  Yes, sir.

 

THE COURT:  —okay, based upon the fact that you have pled
true to habitual enhancement paragraph 1 and habitual counts 1, 2 and 3, the
range of punishment that is available for the jury to assess here against you
is for life in the penitentiary or for any term of not less than 25 years nor
more than 99 years.  Okay?  Do you understand that?

 

DEFENDANT:  Yes, sir

 

THE COURT:  The minimum is 99, the maximum is—pardon
me.  The minimum is 25 years and the maximum
is 99 years or life.

 

DEFENDANT:  Okay.

 

THE COURT:  All right. 
Do you understand that?

 

DEFENDANT:  Yes, sir.

 

THE COURT:  All right. 
Now, knowing that that’s the range of punishment for the offense, do you
still want to plead guilty?

 

DEFENDANT:  Yes, sir.

 

THE COURT:  All right. 
Then, again, are you pleading guilty because of fear or threats or persuasion?

 

DEFENDANT:  I want to plead, sir, yes, sir, I want to
plead guilty.

 

THE COURT:  Well, what I said was this, and, that is, are
you pleading guilty because of fear or threats or persuasion?

 

DEFENDANT:  No, sir.

 

THE COURT:  Has anybody forced you to do that?

 

DEFENDANT:  No, sir.

 

THE COURT:  All right. 
And you understand that you do have the right to plead not guilty?  Do you understand that fully?

 

DEFENDANT:  Yes, sir, yes, sir.

 

THE COURT:  You can plead not guilty.  Do you understand that?

 

DEFENDANT:  Yes, sir. 
I-- I --

 

THE COURT:  All Right. 
You -- understand that -- that right that you have, as an accused person,
to plead not guilty?  Do you understand
all that?

 

DEFENDANT:  Yes, sir. 
I’m sorry.  I’m sorry, Judge.

 

THE COURT:  Okay. 
But if you plead not guilty, then you understand that the State’s
lawyers would have to prove you guilty, they would have to bring in evidence
here and present all the evidence to the jury?

 

DEFENDANT:  Yes, sir. 
Yes, sir.  I -- I—I’m sorry.  I -- I – I’m very sorry.

 

THE COURT:  All right.

 

DEFENDANT:  I’m very sorry I hurt my wife.  She’s the only thing I had.  I -- I love my wife, and I hope 12 people
over there, I -- if I -- you can’t tell me that I ain’t, I loved her, and I’m
so -- so sorry that I hurt her.

 

THE COURT:  All right. 
Well, do you understand -- do you –

 

DEFENDANT:  I’m sorry, Judge.

 

THE COURT:  And now do you understand that this jury, if
you -- with your pleading guilty, is going to decide what your punishment
is?  Do you understand that I’m going to
instruct them to find you guilty and decide your punishment?  Do you understand that?

 

DEFENDANT:  Yes, sir.

 

THE COURT:  All right. 
And that, again, is that what you want to have happen here?

 

DEFENDANT:  Yes, sir.

 

THE COURT:  And you talked to your lawyers about all
this, is that right?

 

DEFENDANT:  Yes, sir.

 

THE COURT:  And that’s – that’s what you have decided to
do freely and voluntarily, is that correct?

 

DEFENDANT:  Yes, sir.

 

THE COURT:  All right. 
All right.  Then I’ll allow you to
plead guilty before the jury and, of course, true to these enhancement and
habitual counts.  

 

After voir
dire, Cooper made his pleas before the jury.  Cooper called the prosecutor a liar as the
prosecutor read the indictment, but he pleaded guilty to both counts without
additional comment, and he pleaded true to the enhancement and habitual
paragraphs. 

At the end
of the first day of trial, Winegardner informed the trial court that Cooper
wanted the opportunity to go back to the state hospital for additional
treatment.  The trial court denied the
request.  

The trial
court admonished Cooper several times not to talk during trial other than to
whisper to his attorney.  It also
admonished Cooper about his right not to testify.  At the conclusion of trial, the trial court
explained to Cooper that he would have a right of appeal. 

3.  Jury
Charge and Judgments

The
punishment charge states that Cooper had been charged by indictment in counts
one and two with the offense of aggravated assault and

[t]o this charge, the
defendant has entered his plea of guilty. 
He has persisted in entering his plea of guilty, notwithstanding that
the Court, as required by law, has admonished him of the consequences of such
plea.  It plainly appearing to the Court that the defendant is mentally
competent, and that he makes this plea freely and voluntarily, his plea is by
this Court received.  [Emphasis
added.]

 

Both
judgments contain the following language: 
“It appeared to the Court that Defendant was mentally competent and had
pleaded as shown above to the charging instrument.” 

C. 
Analysis

We cannot tell
from the record the exact moment when the trial court determined that Cooper
was competent to stand trial.  However, both
the punishment charge and the judgments reflect a finding by the trial court
that Cooper was mentally competent to stand trial.[4]  And the record reflects that the trial court had
the opportunity to consider Cooper’s competence before trial, that it thoroughly
admonished Cooper before trial, and that it had the opportunity to evaluate Cooper’s
mental competence both before and during trial. 
Therefore, we conclude that the trial court made a determination of Cooper’s
competency before accepting Cooper’s guilty pleas.  Schaffer,
583 S.W.2d at 631; cf. Tex. Code
Crim. Proc. Ann. art. 46B.004(b) (“If evidence suggesting the defendant may be
incompetent to stand trial comes to the attention of the court, the court on
its own motion shall suggest that the defendant may be incompetent to stand
trial.”); Montoya v. State, 291
S.W.3d 420, 426 (Tex. Crim. App. 2009) (stating that the standard of review for
a competency determination is abuse of discretion because “those who observed
the behavior of the defendant at the hearing were in a better position to
determine whether []he was presently competent”).  Therefore, we overrule Cooper’s first two
issues.

IV. 
Ineffective Assistance of Counsel

In his
third issue, Cooper argues that he received ineffective assistance of counsel
when his trial counsel failed to examine his file prior to trial and then
advised and allowed him to plead guilty while he was incompetent.  Specifically, Cooper complains that he “acted
strictly under the guidance and advice of the trial counsel.  He pleaded guilty without an agreed
recommendation as to punishment; under the effect of psychoactive medication
prescribed by the evaluating psychiatrist, and having previously been found
incompetent, without a standing adjudication declaring him competent to stand
trial.”  Cooper asserts that a
perfunctory examination of his file would have revealed that there was a
judgment of his incompetency and that he was on psychoactive medication. 

A. 
Standard of Review

To
establish ineffective assistance of counsel, appellant must show by a
preponderance of the evidence that his counsel=s
representation fell below the standard of prevailing professional norms and
that there is a reasonable probability that, but for counsel=s
deficiency, the result of the trial would have been different.  Strickland v. Washington, 466 U.S.
668, 687, 104 S. Ct. 2052, 2064 (1984); Salinas v. State, 163 S.W.3d
734, 740 (Tex. Crim. App. 2005); Mallett v. State, 65 S.W.3d 59, 62–63
(Tex. Crim. App. 2001); Thompson v. State, 9 S.W.3d 808, 812
(Tex. Crim. App. 1999); Hernandez v. State, 988 S.W.2d 770, 770 (Tex.
Crim. App. 1999).

In
evaluating the effectiveness of counsel under the first prong, we look to the
totality of the representation and the particular circumstances of each
case.  Thompson, 9 S.W.3d at
813.  The issue is whether counsel=s
assistance was reasonable under all the circumstances and prevailing
professional norms at the time of the alleged error.  See Strickland, 466 U.S. at 688–89,
104 S. Ct. at 2065.  Review of counsel=s
representation is highly deferential, and the reviewing court indulges a strong
presumption that counsel=s conduct fell within a wide
range of reasonable representation.  Salinas,
163 S.W.3d at 740; Mallett, 65 S.W.3d at 63.  A reviewing court will rarely be in a
position on direct appeal to fairly evaluate the merits of an ineffective
assistance claim.  Thompson, 9
S.W.3d at 813–14.  AIn the
majority of cases, the record on direct appeal is undeveloped and cannot
adequately reflect the motives behind trial counsel=s
actions.@  Salinas, 163 S.W.3d at 740 (quoting Mallett,
65 S.W.3d at 63).  To overcome the
presumption of reasonable professional assistance, Aany
allegation of ineffectiveness must be firmly founded in the record, and the
record must affirmatively demonstrate the alleged ineffectiveness.@  Id. (quoting Thompson, 9 S.W.3d
at 813).  It is not appropriate for an
appellate court to simply infer ineffective assistance based upon unclear
portions of the record.  Mata v. State,
226 S.W.3d 425, 432 (Tex. Crim. App. 2007).

An
appellant claiming ineffective assistance of counsel at trial must identify the
allegedly erroneous acts and omissions of counsel.  Strickland, 466 U.S. at 690, 104 S.
Ct. at 2066.  The appellate court then
determines whether, in light of all the circumstances, these identified acts or
omissions were outside the wide range of competent assistance.  Id.

B. 
Analysis

We
initially note that, based on our resolution of Cooper’s first two issues,
Winegardner did not allow Cooper to plead guilty while he was incompetent.  

Furthermore,
we have seen nothing in the record to indicate that Winegardner failed to
examine Cooper’s file prior to trial.  To
the contrary, it appears from the record that Winegardner was aware of Cooper’s
mental health issues—real or feigned—starting with the motion to withdraw as
counsel that he filed five days after he was appointed to represent Cooper, in
which he stated that he could not effectively communicate with Cooper so as to
be able to adequately represent him and that Cooper refused to cooperate with
him.  And at the beginning of the
defense’s voir dire, Winegardner introduced the philosophy of punishment and
asked, “How does, oh, mental illness play into the philosophy of
punishment?  Do you punish a mentally ill
person the same way as anybody else or differently?”  He led the venire panel through a discussion
of their friends’ and relatives’ mental health treatments and behaviors when
untreated.  And he discussed remorse as a
reason to plead guilty with the potential jurors.  One of the venire panel asked, “[I]n . . . light
of what you’re saying that he’s not all there, does the State have the . . .
resources to put him in . . . in one of the hospitals?” 

Therefore,
on this record, we cannot say that Winegardner advised Cooper to plead guilty
while incompetent or that he failed to examine Cooper’s file prior to trial.  See
Strickland, 466 U.S. at 690, 104 S. Ct. at 2066.  We overrule Cooper’s third issue.

V. 
Conclusion

          Having overruled all of Cooper’s issues,
we affirm the trial court’s judgment.

 

                                                                             
 
 
 
 
 
 
 
 BOB MCCOY

                                                                             JUSTICE

 

PANEL:  
 
 
 
 
 
 
 LIVINGSTON, C.J.; DAUPHINOT and MCCOY, JJ.

 

DAUPHINOT,
J. filed a dissenting opinion.

 

PUBLISH

 

DELIVERED:  December
30, 2010

 

 

 










 

 

 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

 

NO. 02-08-00136-CR 

 

 


 
 
 Steven Wayne 
 Cooper a/k/a Steve 
 Cooper
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE 
 
 


 

 

------------

 

FROM THE 355th District Court
OF Hood COUNTY

------------

DISSENTING
OPINION

----------

          I respectfully dissent from the
majority opinion because, as we have held repeatedly, the law requires a
judicial determination of competence and the opportunity to object before
proceeding with trial in order to overcome the presumption of incompetence to
stand trial after a judicial determination of incompetence.[5]  We do not
presume a judicial determination of competence. 
I would abate and remand as the law requires.[6]

 

 

LEE ANN DAUPHINOT
JUSTICE

 

PUBLISH

 

DELIVERED:  December 30, 2010

 











[1]Evelyn’s sister
testified that there had been numerous incidents of violence between Evelyn and
Cooper before June 2007. 





[2]Doctor Johnson
reported, 

Overall, Mr. Cooper has been functioning in a way
that is inconsistent with someone who is experiencing psychotic symptoms such
as delusions and hallucinations.  The
only evidence that supports the idea that he is experiencing hallucinations is
his own self-report, as the unit staff has never witnessed him exhibiting
bizarre behavior or responding to internal stimuli.

 





[3]The State filed a
motion to dismiss counts 3 and 4 after Cooper’s trial on counts 1 and 2, and
the trial court entered an order to that effect. 





[4]This is in direct
contrast to the situation this court examined in Bradford, in which we noted that the record contained “no judgment,
order, docket sheet entry, or other statement or evidence showing that the
trial court made a determination” that the appellant had regained
competency.  172 S.W.3d at 5.  Because nothing in the record supported a
conclusion that the appellant had regained competency, we remanded that case to
the trial court for a retrospective judicial determination of competency.  Id.
at 6.





[5]See, e.g., Bradford v. State, 172 S.W.3d 1, 6 (Tex. App.––Fort Worth 2005,
order) (abating and remanding to trial court for determination of competence), disp. on merits, No. 02-04-00414-CR,
2005 WL 1926409 (Tex. App.—Fort Worth Aug. 11, 2005, no pet.) (mem. op., not
designated for publication); see also
Tex. Code Crim. Proc. Ann. art. 46B.084 (Vernon Supp. 2010).





[6]See Bradford, 172 S.W.3d at 6.