

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-09-00173-CR
### NO. 02-09-00174-CR

WALLACE JUDKINS                                                    APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

----------

## FROM THE 16TH DISTRICT COURT OF DENTON COUNTY

----------

## MEMORANDUM OPINION[1]

----------

A jury convicted Appellant Wallace Judkins of attempted capital murder, enhanced by two prior felony convictions, and evading arrest. The jury assessed punishment at life imprisonment for attempted capital murder and two years' confinement and a $10,000 fine in the evading arrest case. The trial court sentenced Appellant accordingly. In four issues, Appellant contends (1) that the

---

[1]*See* Tex. R. App. P. 47.4.

trial court erred by not allowing him to present evidence regarding his claim of ineffective assistance of counsel at the hearing on his motion for new trial; (2) that the trial court erred by admitting deposition testimony in violation of his confrontation rights; (3) that the admission of the deposition testimony prevented trial counsel from rendering effective assistance of counsel; and (4) that trial counsel was also ineffective because he failed to produce or offer into evidence medical/psychological testimony and documents regarding Appellant, failed to obtain the appointment of an expert for mitigation purposes, failed to obtain the appointment of an expert regarding ballistics, and failed to obtain the appointment of an expert regarding gunpowder residue.

In six supplemental issues (supplemental issues five through ten) raised after we abated these cases for the trial court to conduct an evidentiary hearing on Appellant's motion for new trial, he complains about the trial court's hearing and granting the State's motion to reconsider and reiterates his complaints about trial counsel's ineffective assistance at trial. Because we hold that the trial court committed no reversible error and that Appellant did not satisfy his burden to prove ineffective assistance of counsel at trial, we affirm the trial court's judgments.

## I. Background Facts

Robert Denning lived in a house on ranch property. Arriving home for lunch on January 6, 2009, Denning noticed a pickup truck parked by the front of his house. Denning stopped to open the cattle guard across his driveway, and

as he then proceeded up the driveway, the truck drove toward him. The driver asked Denning, "Is this so-and-so's house?" Denning asked the driver for the number of the house he was trying to find, and the man drove away.

Thinking that "something [had] happened," Denning called 911 and drove around the back of the house, where he saw that the back door was open. Believing that his house had been broken into, he began backing up his truck. When he got "even with the house," a man, Appellant, was suddenly standing at Denning's vehicle with a gun. Appellant said, "Stop, I'm fixing to kill your ass," and then Denning stepped on the gas pedal. As he drove off, his side mirror hit Appellant and spun him around. Appellant shot at Denning, and the bullet came through the windshield and hit the dash. Appellant fired two more shots at Denning. As Denning continued backing away, he saw Appellant walk around to the front of the house and then come back carrying a gun case belonging to Denning. Appellant then began walking down the driveway. Appellant dropped the guns about two-thirds of the way down the driveway.

At the end of the driveway, Appellant was passed by Deputy Billy Wilson, who was driving southbound. Appellant flagged down a blue Volkswagen heading northbound and driven by Richard Pratt.[2] Appellant got in the vehicle on

---

[2]In a majority opinion, we reversed Appellant's conviction for the aggravated kidnapping of Pratt and remanded that case to the trial court for a new trial. *See Judkins v. State*, No. 02-09-00172-CR, 2010 WL 3377788, at *5 (Tex. App.—Fort Worth Aug. 26, 2010, no pet.) (mem. op., not designated for publication).

3

the passenger side. Denning was still on the phone with 911, and he followed the Volkswagen until passed by a deputy.

Upon hearing a call about a person with a gun in the area he had just passed, Deputy Wilson called in a description of the vehicle he had passed and turned his car around to head northbound. Deputy Tom Huston had been dispatched in response to Denning's call about the burglary, and on the way there, he heard over the radio that a blue Volkswagen was involved. Deputy Huston headed toward the area, and the Volkswagen passed in front of him. As it did so, Deputy Huston saw two white males in the vehicle. The driver looked straight ahead; the passenger looked over his shoulder and continuously watched the deputy as he drove behind the Volkswagen. After two other officers arrived as backup, Deputy Huston turned on his lights to initiate a traffic stop. The Volkswagen did not stop, and a chase ensued.

Trooper Cody Carter testified that he joined in the pursuit at FM 428 and Loop 288. He saw the Volkswagen enter and leave a residential area and ultimately end up in a trailer park.

He admitted to briefly losing sight of the car during his pursuit. At one point, he located it traveling parallel to him. Then he lost it again, saw it behind him in his rear view mirror, and lost it again. Trooper Carter testified that he was in uniform, he was in a marked vehicle, his lights were on, and he was attempting to lawfully arrest the person in the car. Trooper Carter did not participate in the ultimate stop.

4

The chase led to a trailer park where Appellant's mother lived. An officer got out of his unit and was in the process of beginning to throw spikes to puncture the Volkswagen's tires when the Volkswagen turned and drove straight at him. The officer, believing the Volkswagen was going to hit him, dropped the spikes and drew his weapon. The Volkswagen then made a sharp turn and stalled out against a tree in the yard of one of the mobile homes.

Appellant got out of the car on the passenger side, fell or was pushed onto the ground, and was handcuffed by Deputy Johnny Peters. Appellant claimed that the Volkswagen's driver, Pratt, had kidnapped him and that Pratt had a gun. Appellant claimed that Pratt had forced him to get into his car. The officers did indeed find a gun in the Volkswagen, and Pratt admitted that it had been in his lap.

The officers searched Appellant and found several remote controls, a phone, and business cards, items that Denning later identified as his property. Officers found a pair of dark-colored gloves on Appellant as he was being processed into jail.

Investigator Jeff Coats found three matching shell casings outside Denning's house. These shell casings also matched the bullets found in the gun recovered at Appellant's arrest.

Items in Denning's home had been moved from throughout the house and put into a pile. Investigator Coats, looking for fingerprints inside Denning's home,

found patterns that "appeared to take on a glove-like texture," indicating that someone who had been there that day had been wearing gloves.

The State also relied on Denning's statements recorded on the 911 tape that he feared Appellant would flag somebody down or carjack someone. Denning can be heard to say, "Please, don't pull a gun on him"; "The guy's armed and he just flagged down a car. Jesus, don't pull a gun on him after you get in there"; "Please, he's gonna carjack 'em"; and "I've gotta keep these people in sight because somebody's gonna get hurt." The jurors also heard conversations between the 911 operator and police officers referring to Appellant's having flagged down the Volkswagen, a possible carjacking, and a possible hostage in the car. Several officers testified about the chase, and the video of the pursuit was also entered into evidence.

## II. Admission of the Deposition

In his second issue, Appellant complains that the trial court erred by admitting Pratt's deposition in violation of Appellant's constitutional right to confront witnesses against him. We have already held that the admission of Pratt's deposition was constitutional error and harmful in the aggravated kidnapping case.[3] In these two remaining cases, however, the evidence is clear regarding both the attempted capital murder and the flight. Denning's testimony alone addressed all the elements of the attempted capital murder. Pratt had no

---

[3]*See id.* at *4.

6

knowledge of the attempted capital murder that occurred before Appellant flagged him down.

Regarding the evading arrest, the evidence shows that Appellant had a gun at the scene of the attempted capital murder, that only one gun was recovered from the Volkswagen after Appellant's arrest, and that the bullets from that gun and spent casings found at the scene of the attempted capital murder match. Further, Denning's testimony shows that Appellant flagged down the Volkswagen. Such evidence demonstrates that Appellant was not an unwilling passenger in the Volkswagen that evaded law enforcement. The deposition testimony showed only that Pratt was not acting as a party. Accordingly, we hold that the admission of the deposition was harmless in these two cases.[4] We overrule Appellant's second issue.

## III. Hearing on Motion for New Trial—Ineffective Assistance

In his first issue, Appellant complains that the trial court erred by not allowing him to present evidence of ineffective assistance at the hearing on his motion for new trial. At a hearing on his motion for new trial in the trial court before the original appeal, Appellant had attempted to offer evidence of ineffective assistance of counsel at trial. Although the complaint was properly pled in his motion, the trial court did not permit him to offer the necessary

---

[4]*See* Tex. R. App. 44.2(a).

evidence and did not permit him to seek trial counsel's explanation for his actions and inaction at trial and in trial preparation.

This court abated these two cases to the trial court with instructions to hold an evidentiary hearing on Appellant's motion for new trial, and the trial court did hold the hearing. We therefore overrule his first issue as moot.

## IV. State's Motion to Reconsider

In his fifth, sixth, seventh, eighth, and ninth supplemental issues, Appellant complains about the trial court's entertaining and granting the State's Motion to Reconsider. Appellant argues that the trial court lacked the authority to consider and to rule on the State's motion to reconsider granting the motion for new trial because the trial court was limited to considering the motion for new trial only.

Our abatement order required the trial court to hold the evidentiary hearing on Appellant's motion for new trial on or before Monday, October 18, 2010. If the trial court granted Appellant's motion for new trial in either or both cases, the trial court was ordered to forward immediately a copy of the order granting the motion for new trial to this court so that this court could dismiss the corresponding appeal or appeals. If the trial court denied the motion for new trial, the trial court was ordered to file a supplemental reporter's record of the hearing, along with supplemental clerk's records, in this court on or before Monday, November 1, 2010, so the appeals could be automatically reinstated without further order.

The trial court held the hearing on Appellant's motion for new trial and on October 8, 2010, granted the motion, ordering a new trial. Instead of immediately

8

forwarding a copy of the order granting the motion for new trial to this court as ordered, the trial court allowed the State to file a motion to reconsider the order granting Appellant's motion for new trial; considered that motion; entered an order setting another hearing; conducted that hearing on October 21, 2010; granted the State's motion to reconsider; and denied Appellant's motion for new trial.

The trial court, however, advised this court that the State had filed a motion to reconsider and that the trial court intended to conduct a hearing on the State's motion. This court, understanding what the trial court was doing, approved the trial court's actions and extended the deadline for filing the record with this court. The trial court's actions were beyond the scope of the original order, but they were approved by this court in the interest of fairness. Just as it was fundamentally unfair to justify denying Appellant's motion by denying him the opportunity to make the necessary record in support of his motion for new trial, it would have been similarly unfair to justify denying the State's motion by denying the State the opportunity to make the necessary record in support of the State's motion to reconsider.

The Texas Court of Criminal Appeals has held that "an order granting or denying a motion for new trial may be freely rescinded so long as such action occurs within the 75 days provided by the rules (i.e., current Rule 21.8(a) &

(c)) . . ."[5]  Similarly we hold that a trial court may freely rescind an order granting or denying a motion for new trial upon abatement, so long as such action occurs within the period authorized by the appellate court for abatement for the purpose of conducting a hearing on a motion for new trial and ruling thereon.  For the reasons stated above, we overrule Appellant's supplemental issues five, six, seven, eight, and nine.

## V.  Ineffective Assistance Of Counsel

In his third and fourth issues and his tenth supplemental issue, Appellant argues that (1) trial counsel was rendered ineffective because of the admission of Pratt's deposition and (2) he was further denied effective assistance of counsel because trial counsel failed to perform any investigation into any defensive element; offer any evidence of defensive issues, including medical/psychological evidence; or obtain a mitigation expert, ballistics expert, or gunpowder residue expert.

To establish ineffective assistance of counsel, appellant must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different.[6]

---

[5]*Awadelkariem v. State*, 974 S.W.2d 721, 728 (Tex. Crim. App. 1998).

[6]*Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Mallett v.*

10

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case.[7] The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error.[8] Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation.[9] A reviewing court will rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective assistance claim.[10] "In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions."[11] To overcome the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness."[12] It is not appropriate for

---

*State*, 65 S.W.3d 59, 62–63 (Tex. Crim. App. 2001); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999); *Hernandez v. State*, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999).

[7]*Thompson*, 9 S.W.3d at 813.

[8]*See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065.

[9]*Salinas*, 163 S.W.3d at 740; *Mallett*, 65 S.W.3d at 63.

[10]*Salinas*, 163 S.W.3d at 740; *Thompson*, 9 S.W.3d at 813–14.

[11]*Salinas*, 163 S.W.3d at 740 (quoting *Mallett*, 65 S.W.3d at 63).

[12]*Id.* (quoting *Thompson*, 9 S.W.3d at 813).

an appellate court to simply infer ineffective assistance based upon unclear portions of the record.[13]

The second prong of *Strickland* requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial, i.e., a trial with a reliable result.[14] In other words, appellant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.[15] A reasonable probability is a probability sufficient to undermine confidence in the outcome.[16] The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding in which the result is being challenged.[17]

The deposition testimony did not address the attempted capital murder case at all. Although the deposition testimony did address the flight and should not have been admitted because Appellant was not allowed to be present at the deposition and was, therefore, denied his constitutional right of confrontation, the error was, as discussed above, harmless beyond a reasonable doubt. Denning testified to Appellant's flagging down Pratt's car and getting in as Appellant fled

---

[13]*Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007).

[14]*Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064.

[15]*Id.* at 694, 104 S. Ct. at 2068.

[16]*Id.*, 104 S. Ct. at 2068.

[17]*Id.* at 697, 104 S. Ct. at 2070.

12

from Denning's property. Denning testified about following Pratt's car during Appellant's flight. Officers testified about the chase, and the video of the pursuit was also entered into evidence. Consequently, the evading arrest conviction was not dependent on Pratt's deposition testimony, nor was the testimony particularly important to proving the case. We hold that Appellant has failed to satisfy either prong of the *Strickland* test in regard to the admission of the deposition testimony as it relates to the evading arrest and attempted capital murder convictions. We overrule Appellant's third issue.

At the hearing on Appellant's motion for new trial, trial counsel appears to have failed to do anything to refresh his memory regarding trial and trial preparation. As Appellant points out, trial counsel had forgotten many dates and many circumstances, such as whether Appellant was charged with two enhancement paragraphs or only one, certain facts of Appellant's medical history, whether trial counsel had requested an instruction on a lesser included offense, and the like.

Trial counsel had requested a psychiatric examination of Appellant, but had little recollection of Appellant's medical and mental health history. Dr. Goodness, the psychiatrist who was appointed to conduct the examination, found Appellant competent to stand trial, although there is no record that she ever spoke with him in jail. Mandy Smithers, custodian of the records for the Denton County Jail, testified that it was possible that Dr. Goodness had gone into the jail without the visit appearing in the records. Counsel had worked with Dr.

13

Goodness often before and relied on her to determine how prior diagnoses could help the defense case. In this case, Appellant had several prior diagnoses, although counsel could not remember what they were, but Dr. Goodness disagreed with some of the diagnoses after examining Appellant. Although counsel did not personally obtain Appellant's mental health and prison records, Dr. Goodness did.

Trial counsel essentially testified that he felt that his client was trying to manipulate him by acting like he had mental and emotional problems. Counsel emphasized the fact that he was eligible for appointment to capital murder cases and was particularly well qualified to determine what punishment issues should be presented to the jury. He testified that he disliked mitigation experts because they tried to run the case "and tell you how to present your case, which nobody does that for me [sic]." Counsel testified that he was afraid that a Denton County jury panel would likely think "it's a bunch of bologna" because "the mitigation expert is a hired gun. They're there to tell a sob story to make you feel bad about, guilty about putting this gentleman in prison, something like that." In his opinion, the best mitigation witnesses were the family members, but he called only one family member, Appellant's sister, because he believed that the testimony of Appellant's wife and mother would only be redundant and biased.

When asked about his decision not to call an expert to testify about ballistics or gunpowder residue, trial counsel testified that gunpowder residue did not stay in place for very long and that friends who knew more about it than he

14

did had told him things that made him believe that ballistics testimony would hurt the defense.

Trial counsel explained his decisions as a matter of trial strategy based upon his experience and qualifications that permit him to represent clients in death penalty cases. Based on the record before us, we cannot say that Appellant has shown that trial counsel's conduct fell below an objective standard of reasonableness. Appellant has failed to meet the first prong of the *Strickland* test.[18] Even had Appellant met the first prong, the police observed Appellant as he fled from them, and Denning testified that Appellant shot at him when he came upon Appellant burglarizing Denning's home. Appellant has therefore also not met the second prong of *Strickland*—he has not shown that there is a reasonable probability that, but for some deficiency in trial counsel's representation, the result of the trial would have been different.[19] Because Appellant has failed to sustain his burden under *Strickland*, we overrule his fourth issue and his tenth supplemental issue.

---

[18]*See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065.

[19]*Id.* at 694, 104 S. Ct. at 2068.

## VI. Conclusion

Having overruled Appellant's four issues and six supplemental issues, we affirm the trial court's judgments.

LEE ANN DAUPHINOT
JUSTICE

PANEL:  DAUPHINOT, WALKER, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  April 14, 2011