

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 02-09-00297-CR**

KENYON GRADY COX                                                              APPELLANT

V.

THE STATE OF TEXAS                                                                    STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1] ON
## STATE'S MOTION FOR REHEARING

------------

After considering the State's motion for rehearing, we deny the motion, but we withdraw our opinion and judgment of March 31, 2011 and substitute the following.

A jury convicted Appellant Kenyon Grady Cox of two counts of aggravated sexual assault of a child and two counts of indecency with a child by contact and

------------

[1]*See* Tex. R. App. P. 47.4.

assessed his punishment at life imprisonment and a $10,000 fine on each count. The trial court sentenced him accordingly, ordering the sentences to be served consecutively. In eight points, Appellant contends that the trial court abused its discretion by stacking the sentences and that he received ineffective assistance of counsel at trial. We hold that defense counsel rendered ineffective assistance at trial by misstating the application of the stacking law to the venire panel and by not ensuring that such misstatement was corrected before the jury delivered its punishment verdict, but we also hold that the trial court did not reversibly err and that Appellant has not proved his remaining claims of ineffective assistance. We therefore affirm the trial court's judgment as to Appellant's convictions but reverse the trial court's judgment as to punishment and remand this case for a new trial on punishment only.

## I. Trial Court Did Not Abuse Discretion by Stacking Sentences

In his first point, Appellant contends that the trial court abused its discretion by stacking the sentences. Section 3.03 of the penal code provides that the trial court has discretion to stack sentences in cases involving aggravated sexual assault of a child and indecency with a child.[2] The trial court's decision to stack the sentences in this case is therefore "a normative, discretionary function that does not turn on discrete findings of fact"[3] and is "unassailable on appeal."[4] We

---

[2]*See* Tex. Penal Code Ann. § 3.03(b)(2)(A) (West 2011); *see also id.* §§ 21.11, 22.021(a)(1), (2)(B).

[3]*Barrow v. State*, 207 S.W.3d 377, 380 (Tex. Crim. App. 2006).

consequently hold that the trial court did not abuse its discretion by stacking the four sentences and overrule Appellant's first point.

## II. Ineffective Assistance of Counsel at Trial

In his remaining points, Appellant contends that he received ineffective assistance of counsel at trial.

### A. Standard of Review

To establish ineffective assistance of counsel, an appellant must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different.[5]

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case.[6] The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error.[7]

---

[4]*Id.* at 381; *see also Beedy v. State*, 250 S.W.3d 107, 110 (Tex. Crim. App. 2008).

[5]*Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Mallett v. State*, 65 S.W.3d 59, 62–63 (Tex. Crim. App. 2001); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999); *Hernandez v. State*, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999).

[6]*Thompson*, 9 S.W.3d at 813.

[7]*See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065.

Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation.[8]  A reviewing court will rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective assistance claim.[9]  "In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions."[10]  To overcome the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness."[11]  It is not appropriate for an appellate court to simply infer ineffective assistance based upon unclear portions of the record.[12]

The second prong of *Strickland* requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial, that is, a trial with a reliable result.[13]  In other words, appellant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

---

[8]*Salinas*, 163 S.W.3d at 740; *Mallett*, 65 S.W.3d at 63.

[9]*Salinas*, 163 S.W.3d at 740; *Thompson*, 9 S.W.3d at 813–14.

[10]*Salinas*, 163 S.W.3d at 740 (quoting *Mallett*, 65 S.W.3d at 63).

[11]*Id.* (quoting *Thompson*, 9 S.W.3d at 813).

[12]*Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007).

[13]*Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064.

proceeding would have been different.[14]  A reasonable probability is a probability sufficient to undermine confidence in the outcome.[15]  The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding in which the result is being challenged.[16]

## B.  No Ineffective Assistance by Failing to File Motion to Sever

In his fourth and fifth points, Appellant contends that his trial counsel rendered ineffective assistance by not filing a motion to sever.  As Appellant admits, section 3.04(c) of the penal code provides,

> The right to severance under this section does not apply to a prosecution for offenses described by Section 3.03(b) unless the court determines that the defendant or the state would be unfairly prejudiced by a joinder of offenses, in which event the judge may order the offenses to be tried separately or may order other relief as justice requires.[17]

Section 3.03(b)(2) applies to certain sexual offenses against complainants younger than seventeen years old, such as the offenses in this case.[18]

Appellant does not explain how trial counsel's filing of a motion to sever could have possibly changed the outcome of his trial and gives no evidence of unfair prejudice based on the joinder of the four offenses.  Accordingly, he has

---

[14]*Id.* at 694, 104 S. Ct. at 2068.

[15]*Id.*

[16]*Id.* at 697, 104 S. Ct. at 2070.

[17]Tex. Penal Code Ann. § 3.04(c) (West 2011).

[18]*Id.* § 3.03(b)(2).

failed to prove ineffective assistance of counsel in this regard. We therefore overrule his fourth and fifth points.

## C. No Ineffective Assistance Regarding Extraneous Offenses

In his sixth, seventh, and eighth points, Appellant complains that his trial counsel rendered ineffective assistance by not objecting to the admission of evidence about extraneous offenses, not making a running objection thereto, and not timely requesting a limiting instruction. In her opening statement, defense counsel stated,

> [F.S.] is going to talk about her mother . . . . And that there were not just one, but on multiple occasions, had there been some type of questioning of these children. And then on multiple times there was not any allegations substantiated.
>
> But if you tell a child something enough and you tell a child this is what you want to hear enough, perhaps you might get the answer you want. . . . And is this a case of, well, if we ask you enough times, perhaps we're going to get the right answer.

The following voir dire examination of Appellant by defense counsel occurred after opening statements but before the State called its first witness:

Q. Mr. Cox, you are Kenyon Grady Cox, correct?

A. Yes.

Q. And you are the person who is today accused in Cause No. 1168562 of various counts of aggravated sexual assault, indecency, fondling and indecent exposure, correct?

A. Yes.

Q. And for much time now you have indicated your innocence and that you wish to pursue a trial with regard to these allegations, correct?

A. Yes.

6

Q. And you have indicated to me you would never accept a plea because you felt you did not commit this offense, correct?

A. Yes.

Q. Okay. And part of preparation for trial you and I have discussed on multiple occasions that previous to the June 7th referral to CPS, with regard to the children and the neglectful supervision, there had been four other referrals between yourself and Ms. [F.S.] with regard to your treatment of the children, correct?

A. Yes.

Q. And I have indicated to you that in this trial the only pertinent issue would be that June 7th of '07 referral. You remember we discussed that?

A. That—

Q. Because that's the one that brought everything out was the June 2007?

A. When they took the kids?

Q. Yes. The one we talked about the one?

A. Yeah.

Q. —that you heard [the prosecutor] talk about on her—

A. Yeah.

Q. —on her opening statement?

A. Yeah.

Q. But you feel that it would be in your best interest if these other four referrals; June 7th of '07—I'm sorry. February 7th of '07, February 13th of '07, February 3rd of '06, and August 9th of '06, if the jury also heard about those referrals—

A. Yeah.

Q. —and the outcome of those referrals?

A. Yes.

7

Q. And I have discussed with you that if we go ahead—anything we discuss with any of the witnesses and if we open the door to these other referrals, then that would also give [the prosecutors] the opportunity to question these same witnesses regarding these other referrals?

A. Yes.

Q. And you feel now it's your trial strategy and it's your trial, despite my recommendations, that you want to go into these other CPS referrals?

A. Yes.

Q. And you feel it would be in your interest, it's your trial, that you want the jury to hear about all these other referrals?

A. Yes.

Q. And that is what you're asking me to do right now at this stage, when we begin talking to witnesses and they come on the stand that you ask that I also refer to these other CPS investigations?

A. Yeah.

[PROSECUTOR]: Your Honor, just briefly for the record, I have not discussed this with Defense counsel, these children were interviewed on previous instances, mostly with reference to physical abuse, but were also asked about sexual abuse. It is the State's position that if Defense counsel goes into that, that it is then the State's right to show why these children were reluctant to come forward. And that would include numerous acts of physical abuse that were either committed upon these children or that were committed in their presence by this Defendant against them and their mother, as well as the fact that this Defendant beat their puppy to death with a bat in front of them. And just for purposes of the record, it is our intention and I think, frankly, I think opening statement probably opened the door to it, that we intend to go into those things in light of Defense's strategy of handling the case in this manner.

[DEFENSE COUNSEL]: And, Your Honor, I have discussed that with my client and he feels, as we just discussed, he and I have discussed that and we discussed that if—it would be your decision

8

on how much, if anything, of these extraneous acts the prosecution is allowed to go into—or these alleged extraneous acts.

THE COURT: Well, I don't think I'm going to be able to limit it as far as if the door is open and y'all start get[ting] into extraneous acts, it's all going to come in. It's as simple as that. I mean, I can't limit a portion of this. And I think that if you start trying to get into with the children about other incidents then, of course, the State has [a] right to expand on why they had these other incidents, which could include the physical abuse, as well as—even as far as the incident with the puppy. I mean, that's—those are bad acts and it's going to come in.

[DEFENSE COUNSEL]: And do you understand—Mr. Cox, do you understand what the Judge's ruling is in that regard?

[A.] That's fine.

[Q.] And it's still your desire that we discuss those?

[A.] Yeah.

THE COURT: All right.

[PROSECUTOR]: And, Your Honor, since the door was opened in opening statements, it is my intent to go into those things on direct examination with the child, who will be the State's first witness.

[DEFENSE COUNSEL]: And, Your Honor, the only reason I did that was because we didn't have an opportunity to—

THE COURT: Right.

[DEFENSE COUNSEL]: —discuss with you outside of the presence of the jury, as I requested prior to the openings—

THE COURT: All right.

[DEFENSE COUNSEL]: —with regards to all these instances.

THE COURT: Okay. Real good.

(A brief pause in proceedings.)

9

[PROSECUTOR]: Are we on the record? Okay. Your Honor, at the end of our previous discussion with Defense counsel, she made mention of the fact that we did not take these issues up prior to her having made her opening statement. However, it's my understanding that regardless of her having made her opening statement, even if she were able to rescind those statements, it is still their intent to go into the prior denials of abuse by the children, thus opening the door to allow us to go into the prior acts of violence witnessed by the children by this Defendant.

[DEFENSE COUNSEL]: And—and Mr. Cox and I have been discussing this for several days now, Judge. So I believe it was Mr. Cox's position all along that yes, we do go into these prior CPS referrals.

THE COURT: Okay. All right. Then the door will be open. All right. . . .

It is clear from Appellant's testimony outside the jury's presence that he knowingly insisted against the advice of counsel on the strategy of delving into multiple CPS complaints occurring before the one involving the outcry, the admission of which opened the door to a multitude of extraneous offenses, including conduct amounting to domestic violence, child abuse, and aggravated assault with a deadly weapon, as well as the brutal killing of the family dog. Further, even though counsel did not timely request a limiting instruction, a limiting instruction appears in the jury charge. Additionally, Appellant has not shown that but for the admission of this evidence, there is a reasonable probability that the outcome of his trial would be different. Consequently, we cannot say that Appellant has proven ineffective assistance of counsel on these grounds. We therefore overrule his sixth, seventh, and eighth points.

**D. Ineffective Assistance by Not Ensuring that Jury Received Correct Law on Stacking Before Delivering Punishment Verdict**

In his second and third points, Appellant contends that his trial counsel rendered ineffective assistance of counsel by failing to understand the law on stacking and misstating the law on stacking to the venire panel. Within his discussion, he also contends that his trial counsel rendered ineffective assistance of counsel by not assuring that the jury had the correct law when deliberating. We agree.

In *Andrews v. State*, the Texas Court of Criminal Appeals concluded that "there could be no legitimate trial strategy in failing to object to the prosecutor's misstatement" in the State's closing argument regarding the stacking law, especially when Andrews's defense counsel knew that the State had filed a motion to cumulate the sentences.[19] The court also noted that "[h]ad defense counsel objected on the basis that the prosecutor's argument was a misstatement of the law, the trial court could have corrected the misstatement and told the jury not to consider whether the court could or would cumulate the sentences."[20] The Texas Court of Criminal Appeals explained,

> [W]e have said that the record on direct appeal is in almost all cases inadequate to show that counsel's conduct fell below an objectively reasonable standard of performance and that the better course is to pursue the claim in habeas proceedings. But, when no reasonable trial strategy could justify the trial counsel's conduct, counsel's

[19]159 S.W.3d 98, 100, 103 (Tex. Crim. App. 2005).

[20]*Id.; see also* Tex. Penal Code Ann. § 3.03(b)(2)(A).

11

performance falls below an objective standard of reasonableness as a matter of law, regardless of whether the record adequately reflects the trial counsel's subjective reasons for acting as she did.[21]

The Texas Court of Criminal Appeals reminded us that *Strickland* not only requires that our review be "highly deferential"; it also requires that reviewing courts "keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work."[22] The Texas Court of Criminal Appeals concluded,

> Defense counsel has a duty to correct misstatements of law that are detrimental to his client. This duty derives from counsel's function to make the adversarial testing process work . . . . There can be no reasonable trial strategy in failing to correct a misstatement of law that is detrimental to the client.[23]

On the second *Strickland* prong, the Texas Court of Criminal Appeals concluded that "[b]ecause the jury received incorrect information about [Andrews's] punishment, the record supports the conclusion that there is a reasonable probability that the result would have been different."[24]

---

[21]*Id.* at 102 (citations omitted).

[22]*Id.*

[23]*Id.* (citations and internal quotation marks omitted).

[24]*Id.* at 103.

Here, the following discussion took place during voir dire:

VENIREPERSON: I just had a question. I don't know if I missed what he was saying, but there's going to be three charges that we're going to judge innocent or guilt, and as far as the punishment phase, does that mean they're separate or do they run concurrent if we do so find him guilty?

[DEFENSE COUNSEL]: And in this case they would run concurrent.

[PROSECUTOR]: They'll get a charge on that.

[DEFENSE COUNSEL]: And so you would also get a—a legal charge. Again, that's a legal question, with a legal answer, which you will get from the Judge, who will tell you, okay, now we have found someone guilty—because again, there may be multiple things and you may say, Okay, we find him—we think he's guilty of this one and not this one or we think you're guilty of this—this middle one. So once that decision is made—

VENIREPERSON: Okay.

[DEFENSE COUNSEL]:—then you move on to your second decision.

VENIREPERSON: Okay.

[DEFENSE COUNSEL]: And I promise you you will get lots and lots of pages about the law and how that all works.

VENIREPERSON: Okay.

[DEFENSE COUNSEL]: So—and I sound murky, but I don't want to go too much into that.

Because the legislature has given the trial court discretion to stack (or not stack) sentences in cases involving aggravated sexual assault of a child and indecency with a child,[25] defense counsel's statement that the sentences would

---

[25]See Tex. Penal Code Ann. § 3.03(b)(2)(A).

13

run concurrently was a misstatement of law. But the prosecutor's statement that the jury would "get a charge on that" was likewise a misstatement of law, and defense counsel magnified both misstatements of law by agreeing with the prosecutor that the jury would be charged on "how that all works." Had defense counsel instead objected to the prosecutor's incorrect statement of law during voir dire, "the trial court could have corrected the misstatement and told the jury not to consider whether the court could or would cumulate the sentences."[26]

The State filed its motion to stack on the same day that the jury received the punishment charge. After the jury began deliberations, the foreman sent a note to the trial judge. The note stated, "The jury is interested in knowing how the law applies to . . . whether any of the sentences in this case run concurrently or consecutively." The following occurred after the trial court received the note:

> (Jury deliberating.)
>
> (Open court, Defendant present.)
>
> COURT REPORTER: The note reads: In answer to your jury note number three, the Court cannot answer your question. Please refer to charge of the Court and continue your deliberations.
>
> [PROSECUTOR]: Okay.
>
> [DEFENSE COUNSEL]: Okay.

---

[26]*Andrews*, 159 S.W.3d at 103; *see also* Tex. Penal Code Ann. § 3.03(b)(2)(A).

Here, too, defense counsel could have cured his mistakes by requesting that the trial court clarify for the jury that it should not "consider whether the court could or would cumulate the sentences."[27] Instead, he said, "Okay."

Following *Andrews*, we hold that defense counsel rendered ineffective assistance at trial by misstating the law to the venire panel, agreeing with the prosecutor's misstatement of the law instead of challenging it, and not ensuring that the jury had the correct information on stacking before it delivered the punishment verdict. We therefore sustain Appellant's second and third points.

## III. Conclusion

Because we have sustained Appellant's second and third points but have overruled his remaining six points, we affirm the trial court's judgment as to Appellant's convictions, reverse the judgment as to his punishment, and remand this case to the trial court for a new trial on punishment.

LEE ANN DAUPHINOT
JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: November 17, 2011

---

[27]*Andrews*, 159 S.W.3d at 103; *see also* Tex. Penal Code Ann. § 3.03(b)(2)(A).

15